In re Joe Alvin SEXTON, Novena J. Sexton, Debtors.

**FRUEHAUF CORPORATION, Plaintiff,**

v.

**Joe Alvin SEXTON, Novena J. Sexton, Aztex Energy Company, and Leon Steinberg, Trustee, Defendants.**

Bankruptcy No. 3–79–00834.
Adv. No. 3–81–0649.

United States Bankruptcy Court, E. D. Tennessee.

Dec. 23, 1981.

C. A. Ridge, Jr., Knoxville, Tenn., for plaintiff.

W. Morris Kizer and Arthur G. Seymour, Knoxville, Tenn., for defendant, Aztex Energy Co.

Leon Steinberg, Trustee, pro se.

MEMORANDUM

CLIVE W. BARE, Bankruptcy Judge.

The issue in this adversary proceeding is whether under Tennessee law a security interest in a semitrailer is perfected by the notation of the lien upon the title certificate or by the filing of a financing statement with the Tennessee Secretary of State.

I

On November 2, 1978, Fruehauf Corporation sold Joe Alvin Sexton a Fruehauf 9200 gallon gasoline tanker trailer. Sexton granted Fruehauf a security interest in the

trailer to secure the unpaid balance of the purchase price. On January 10, 1979, Fruehauf attempted to perfect its security interest in the trailer by having its lien noted on a certificate of title issued by the Tennessee Secretary of State. Fruehauf did not file a financing statement.

Thereafter, on July 10, 1979, Sexton granted Aztex Energy Company a security interest in the Fruehauf trailer. On July 11, 1979, Aztex filed a series of financing statements in the office of the Tennessee Secretary of State. Each financing statement purports to perfect a security interest in the trailer. Aztex made no attempt to have its lien noted on the certificate of title.

On November 26, 1979, Sexton filed a bankruptcy petition under Chapter 11 of the Bankruptcy Code. On October 17, 1980, the case was converted to a case under Chapter 7 at which time Leon Steinberg was appointed trustee. On July 27, 1981, the present adversary proceeding was initiated. The plaintiff, Fruehauf, contends that a security interest in a semitrailer may be perfected only by the noting of the lien on the certificate of title covering the vehicle.[1] Aztex contends that the Motor Vehicle Title and Registration Law is inapplicable; therefore, the security interest in a semitrailer may be perfected only by the filing of a financing statement in the office of the Secretary of State.

## II

Generally, in order to perfect a security interest in property, a party must file a financing statement with the proper public official. T.C.A. § 47–9–302. However,

"The filing provisions of this chapter do not apply to a security interest in property subject to a statute: ... (b) of this state which provides for central filing of, or which requires indication on a certificate of title of, such security interests in such property."

"A security interest in property covered by a statute described in subsection (3) can be perfected only ... by indication of the security interest on a certificate of title or a duplicate thereof by a public official." § 47–9–302(3), (4).

Thus, for certain types of property a security interest may be perfected only by indication of the security interest on the certificate of title. T.C.A. § 47–9–302(4). The Tennessee Motor Vehicle Title and Registration Law identifies those types of collateral on which a security interest may be perfected only by notation on the certificate of title.

Section 55–3–101 expressly provides that every *"motor vehicle...when driven or moved upon a highway, ... shall be subject to the registration and certificate of title provisions...."* (Emphasis added). This court has previously held that for the purposes of the registration and certificate of title provisions of the Motor Vehicle Title and Registration Law a "semitrailer" is not a "motor vehicle."[2] *Coode v. Peterbilt*

---

1. The parties have stipulated that the Fruehauf tanker trailer is a semitrailer as defined in T.C.A. § 55–1–105(b):

    "The word 'semitrailer' shall mean every vehicle without motive power and not a motor vehicle as herein defined, ... designed for carrying persons or property and for being drawn by a motor vehicle and so constructed that some part of its weight and that of its load rests upon or is carried by another vehicle."

    The parties have also stipulated that the tanker trailer is within the definition of equipment contained in T.C.A. § 47–9–109(2):

    "Goods are:
    ...
    (2) 'equipment' if they are used or bought for use primarily in business...or by a debtor who is a nonprofit organization or a govern-

    mental subdivision or agency or if the goods are not included in the definitions of inventory, farm products or consumer goods; ...."

2. "Motor vehicle" is defined as

    "every vehicle which is self-propelled excluding motorized bicycles and every vehicle which is not propelled by electric power obtained from overhead trolley wires." T.C.A. § 55–1–103(b).

    A "semitrailer" is defined as

    "every vehicle without motive power and not a motor vehicle as herein defined, other than a pole trailer, designed for carrying persons or property and for being drawn by a motor vehicle and so constructed that some part of its weight and that of its load rests upon or is carried by another vehicle." T.C.A. § 55–1–105(b).

*Leasing,* Adv.Proc.No.3–80–0603 (June 9, 1981).

While § 55–3–101 does not specifically require that semitrailers be registered and a certificate of title be issued, the provisions of the Title and Registration Act are conflicting. Section 55–4–101 states that "motor vehicles" shall be registered as a condition precedent to the operation of the motor vehicle on the streets or highways of the state. However, § 55–4–113 which details the registration fees for specific vehicles states that "freight trailers and semitrailers used primarily for hauling freight shall be registered...." T.C.A. § 55–4–113(6).

The Act further requires that every owner of a "vehicle, subject to registration hereunder and for which no certificate of title has ever been issued...shall make application...for the issuance of a certificate of title for such vehicle...." T.C.A. § 55–3–103(a). Among the various items to be listed on this application is a statement of liens or encumbrances. T.C.A. § 55–3–103(a)(3). After the Division of Motor Vehicles has received and approved the application, a certificate of title will be issued. This certificate, which has a notation showing all liens or encumbrances on the vehicle, will be delivered to the first lienholder. T.C.A. § 55–3–114(d). Thus, since semitrailers must be registered,[3] a certificate of title must be issued on the vehicle.

Aztex argues that the above conclusion cannot be sustained by a reading of the statute. According to Aztex, § 55–4–113(6) relates to the registration of semitrailers only for the purpose of the payment of a registration tax and the issuance of registration plates. While it is true, as Aztex maintains, that Chapter 4 of the Title and Registration Act pertains only to the issuance of registration certificates and other matters pertinent to the collection of a registration tax, § 55–3–103(a) clearly states that the owner "of a vehicle, subject to registration hereunder" shall apply for a certificate of title. The court can only conclude that in referring to vehicles subject to registration "hereunder" the statute refers to the only registration requirements in the Title and Registration Act, i.e., the requirements contained in Chapter 4. *See* Opinion of the Attorney General of Tennessee, Opinion No. 35, November 19, 1976, 22 U.C. C.Rep. 210.

The task of the court at present is to ascertain whether the legislature intended security interests in semitrailers to be perfected by the noting of the lien on the vehicle's certificate of title. As stated above, semitrailers are required to be registered, thus a certificate of title must be issued. However, some provisions of Chapter 3 of the Title and Registration Act are inconsistent with this interpretation. In these provisions the terms "motor vehicle" and "vehicle" seem to be used interchangeably, resulting in a lack of uniformity. For example, § 55–3–118 provides that in order to transfer title to a "motor vehicle" the owner of the motor vehicle shall endorse an assignment on the certificate of title. If the certificate of title is held by a lienor, the owner of the "motor vehicle" may execute a bill of sale. There is no statute concerning the transfer of title to a "vehicle."

Finally, when a lien is placed on any "motor vehicle," § 55–3–123 requires the owner of the motor vehicle to deliver his certificate of title to the lienor for the purpose of noting the lien thereon. There is no such provision applicable to liens on other vehicles. However, § 55–3–125 states that

> "No conditional sales contract, chattel mortgage, or other lien or encumbrance or title retention instrument upon a *registered vehicle,* other than a lien dependent upon possession entered into after March 1, 1951, or a lien of the state for taxes...shall be valid against the creditors of an owner or subsequent purchasers or encumbrancers until the requirements of this section and § 55–3–126 have been complied with, unless such creditor, pur-

---

**3.** Section 55–3–102 makes it a misdemeanor for any person to drive or permit to be driven a "vehicle" subject to the registration requirement which has not been so registered.

chaser, or encumbrancer has actual notice of the prior lien." T.C.A. § 55–3–125. (Emphasis added).

Section 55–3–126 provides that the notation of a lien constitutes constructive notice to creditors of the owner of the vehicle and subsequent purchasers.

Regardless of the lack of uniformity that exists in the Title and Registration Act, the court concludes that the legislature intended that security interests in semitrailers be perfected by notation of the lien on the vehicle's certificate of title. Fruehauf's lien is, therefore, superior and takes priority over the unperfected security interest of Aztex.

This Memorandum constitutes findings of fact and conclusions of law, Bankruptcy Rule 752.