MERRITT, Circuit Judge.
 

 This is an appeal from a judgment of the bankruptcy court holding that the appellant’s security interest in a tractor, which was indicated on a certificate of title issued in Illinois, was not perfected under the laws of Michigan and was invalid as to the bankrupt’s trustee.
 
 In re Paige,
 
 3 B.R. 115 (W.D.Mich.1980). The District Court, in an unpublished order, affirmed and the creditor appealed. We reverse.
 

 The facts are not in dispute. The bankrupt, Ralph Paige, was a resident of Michigan. He purchased a truck tractor in Indiana from Parts and Trucks, Inc. Parts and Trucks, which received a purchase money security interest in the tractor, assigned the security agreement to the appellant, Associates Commercial Corporation. The security agreement indicated that the debtor resided in Michigan.
 

 The debtor worked as an interstate hauler for Overland Express. Overland’s terminal was in Northern Indiana, it had a business office in Chicago, Illinois, and its home office was in Minnesota. An agent of Overland prepared an application for certificate of title to be issued by the state of Illinois. The application was apparently signed by Paige, although he did not specifically remember doing so. The application gave an Illinois address — apparently the address of Overland’s Chicago business office — as the debtor’s legal address. On the basis of this application the state of Illinois issued a certificate of title to the vehicle. The certificate indicated the security interest of the appellant. No application for a
 
 *602
 
 Michigan title was filed nor was there any evidence that a financing statement had ever been filed.
 

 The question, simply stated, is whether the Illinois certificate of title which indicated the appellant’s security interest constituted perfection of that security interest under Michigan law. The resolution of this issue depends on whether section 440.-9103(2) or section 440.9103(4) of the Michigan Code applies. Section 440.9103(2) of the Michigan Code, U.C.C. § 9-103(2) (1962 version), establishes a chief place of business rule for determining the validity of a security interest in mobile goods. In relevant part, it provides:
 

 If the chief place of business of a debtor is in this state, this article governs the validity and perfection of a security interest and the possibility and effect of proper filing with regard to general intangibles or with regard to goods of a type which are normally used in more than one jurisdiction (such as automotive equipment, rolling stock, airplanes, road building equipment, commercial harvesting equipment, construction machinery and the like) if such goods are classified as equipment or classified as inventory by reason of their being leased by the debtor to others.
 

 There is no dispute that the debtor’s chief place of business was Michigan; therefore, if section 9-103(2) is controlling Michigan law governs and the security interest is unperfected since no application for a Michigan title was filed.
 

 However, section 440.9103(4) of the Michigan Code, U.C.C. § 9-103(4) (1962 version), provides an exception to subsection (2). It provides:
 

 Notwithstanding subsections (2) and (3), if personal property is covered by a certificate of title issued under a statute of this state or any other jurisdiction which requires indication on a certificate of title of any security interest in the property as a condition of perfection, then the perfection is governed by the law of the jurisdiction which issued the certificate.
 

 If this subsection governs the law of Illinois (“the jurisdiction which issued the certificate”) applies, with the result that the security interest was properly perfected by means of notation on the certificate of title.
 

 A literal reading of section 9-103(4) indicates that it should be applied whenever a certificate of title is issued by a foreign jurisdiction which as a condition of perfection requires notation of the security interest on the certificate. Illinois does require “indication on a certificate of title as a condition of perfection” and, therefore, would seem to satisfy the requirement. Bankruptcy Judge Nims focused on the word “requires” and interpreted it broadly. He concluded that section 9-103(4) was applicable only if Illinois required notation on the certificate as a condition of perfection
 
 and
 
 required an Illinois certificate of title for the tractor. Only the former requirement is expressly stated in section 9-103(4). The latter, if a requirement at all, is implied. Illinois law does not
 
 require
 
 a certificate of title to be issued under these circumstances, i.e. to a non-resident motorist. Therefore, Judge Nims reasoned, section 9-103(4) does not come into play.
 

 We reject this interpretation because it seems contrary to the purpose of the subsection. The subsection promotes uniform recognition of security interests which have been noted on the certificate of title. It does not appear to be the purpose of the subsection to defeat security interests which are properly noted on a valid certificate merely because the certificating jurisdiction did not
 
 require
 
 the debtor to obtain a certificate of title from that jurisdiction.
 

 Judge Nims also based his decision on two prior cases in which he held that “[section 9-103(4) would only apply if the security interest had been properly perfected by indicating it on the title in an appropriate State
 
 if
 
 the State issuing the certificate of title is the proper State under 9-103(2) or 9-103(3).”
 
 In re Brown,
 
 5 U.C.C.Rep. 401, 408 (W.D.Mich.Bankr.1968) (emphasis in original);
 
 In re Angier,
 
 No. NK 75-1170 B8 (W.D.Mich.Bankr.1977). Judge Nims’ interpretation imports the “chief place of business” rule of section 9-103(2) and (3) into
 
 *603
 
 subsection (4). Thus, notation of a security interest on a certificate of title issued by a foreign jurisdiction constitutes perfection only if the foreign jurisdiction requires indication of the certificate as a condition of perfection and the foreign jurisdiction is the debtor’s chief place of business.
 

 Judge Nims’ interpretation of the statute is based upon two concerns: (1) that the debtor may have fraudulently obtained the certificate of title from an inappropriate foreign jurisdiction and (2) that to permit perfection of a security interest on foreign certificates of title regardless of whether the foreign jurisdiction is the debtor’s chief place of business is destructive of the “notice” policy of Article 9. In this case the debtor gave a Chicago address in his application for an Illinois certificate of title. The debtor testified that he did not recognize that address but that it could have been the address of the Chicago office of Overland Express. The debtor’s business and residence were in Michigan. Nevertheless, there is no question raised about the validity of this Illinois certificate. Apparently Illinois had the power or authority to issue the certificate.
 

 In
 
 Brown, supra,
 
 Judge Nims (then Referee Nims) addressed section 9-103(4) and the notice policy of Article 9. He stated:
 

 If we read the statute literally, a trucker could pick any state in which to obtain his title and one searching the records would only be safe if he checked each of fifty states.... But if notice is a governing factor of the UCC, notice must be given where it can be reasonably found and not hidden from the world because of misrepresentations of the debtor ...
 

 5 U.C.C.Rep. at 407.
 

 In re Dawson,
 
 21 U.C.C.Rep. 293 (E.D.Mo.Bankr.1976) considered and rejected Judge Nims’ reasoning. In
 
 Dawson
 
 the debtor, a resident of Missouri, purchased a tractor in Missouri but had a certificate of title showing the secured party’s interest issued by Indiana. In order to obtain an Indiana certificate of title the debtor gave a fictitious Indiana address. The trustee argued that the security interest was unperfected by the notation on the foreign certificate of title. The court squarely rejected Judge Nims’ reasoning based upon the notice principles of the UCC noting that section 9-103(4)
 

 is applicable only when a title is issued by a state whose laws require, in order to perfect a lien on a motor vehicle, that the lien be noted on the title. Laws providing for the registration and titling of vehicles are now, and have been for some time, commonplace, and prospective lenders are generally aware of their existence. Any such lender, preparing to extend credit to the owner of a vehicle used in multi-state commerce (if the ownership, and the value, of the vehicle are important factors in the credit transaction), will most assuredly ask his prospective debtor for his registration and title papers to such a vehicle, and begin his credit investigation, in respect of liens, in the certificating state.. .. This, it seems to me, is what § 9-103(4) comprehends, a scheme in accordance with and not incompatible to the notice concepts of the UCC.
 

 21 U.C.C.Rep. at 299. We find the reasoning in the
 
 Dawson
 
 case to be persuasive. As the
 
 Dawson
 
 case reveals, a literal application of section 9-103(4) does no real harm to the notice policy of the UCC. Moreover, a loose interpretation of section 9-103(4), as preferred by Judge Nims, does some violence to the values of certainty which the UCC was intended to promote. The introduction of a standard which requires the certificating state to be the state of the debtor’s chief place of business may cast uncertainty on the perfection of security interests in vehicles used in more than one jurisdiction. The advantage of a literal interpretation of section 9-103(4) is that a potential creditor need look only to one place — the certificate of title — to discover prior security interests. If the debtor cannot or will not produce the title certificate the potential creditor is immediately on notice that he acts at his own risk. However, the interpretation offered by Judge Nims would require a potential creditor not only
 
 *604
 
 to examine the debtor’s certificate of title but also to determine whether it was issued by the state of the debtor’s chief place of business. We do not believe that the drafters of the UCC intended to complicate commercial transactions by such a requirement.
 

 Accordingly, the judgment of the District Court is reversed.