In re Wilmer L. **COSSAIRT**, Carolyn A. Cossairt, Debtors.

Joseph A. **CHRYSTLER**, Trustee, Plaintiff,

v.

INTERNATIONAL HARVESTER CREDIT CORPORATION, Defendant.

Bankruptcy No. NK 83–02019. Adv. No. 83–1512.

United States Bankruptcy Court, W.D. Michigan.

Sept. 19, 1984.

Stanley, Davidoff & Gray, P.C. (Paul F. Davidoff), Kalamazoo, Mich., for plaintiff.

Deming, Hughey, Lewis, Keiser, Allen & Chapman, P.C. (Thomas C. Richardson), Kalamazoo, Mich., for defendant.

## OPINION

DAVID E. NIMS, Jr., Bankruptcy Judge.

## SECURITY INTERESTS—PERFECTION—MOTOR VEHICLES

The trustee filed a complaint praying for an order determining that the security interest of International Harvester Credit Corporation (International) be held to be invalid.

On April 29, 1981, Wilmer L. Cossairt and Carolyn A. Cossairt, debtors, purchased a new 1981 International Harvester truck tractor bearing serial number 1HTL23270BGA18694 from Williams Service, Inc. (Williams), of Florence, Kansas, for $53,600. In consideration of the financing of the sale, debtors executed a security agreement granting a security interest in the vehicle to International. Although debtors had always lived and operated out of Michigan, a certificate of title showing International as first lienholder was issued by the State of Illinois.

Sometime after the sale, the vehicle was involved in an accident which required extensive repairs. These repairs were made by Williams. Because of the extent of the damages, Williams used what is known as a "glider kit." These "glider kits" include the frame, radiator, front tires and wheels, cab, and steering wheel and gears. The frame is cut to fit the desired length of the vehicle. The engine, drive train, transmission, rear wheels, accessories, etc., from the damaged unit are used where possible. In this case, the cost of the glider kit, labor, and additional parts came to $24,500.

On April 22, 1982, the Cossairts executed a "Substitution Agreement" whereby a new 1982 International Harvester truck tractor having serial number 1HTL23576BGA18954 was substituted for the property described and covered in the security agreement dated April 29, 1981, between them and Williams. This substitution was approved and accepted by Williams. The new serial number was attached to the door jamb at the driver's side and came with the glider kit. The manufacturer issued a certificate of origin with the glider kit and this certificate would note the security interest of International on the back. The serial number would indicate that it came with a glider kit. Once the glider kit was installed, there would be no visual difference between the repaired truck and the truck before the accident, except for the serial number. Rodney R. Williams, president of Williams, gave the certificate of origin to Mr. Cossairt and told him that he should obtain a new title because of the change in serial number. He told Cossairt that if he did not get a new title he could have trouble at a port of entry. However, no new title was obtained.

The trustee claims that there is no perfection because the only title on record now shows the wrong serial number. International contends that there is merely a repair and that the security interest that had

previously been perfected, was still perfected by the Illinois title.

Mich.Comp.Laws § 440.9103 (Mich.Stat. Ann. § 19.9103 (Callaghan 1981)) Subsection (2) provides:

"Certificate of title.

"(a) This subsection applies to goods covered by a certificate of title issued under a statute of this state or of another jurisdiction under the law of which indication of a security interest on the certificate is required as a condition of perfection.

"(b) Except as otherwise provided in this subsection, perfection and the effect of perfection or nonperfection of the security interest are governed by the law (including the conflict of laws rules) of the jurisdiction issuing the certificate until 4 months after the goods are removed from that jurisdiction and thereafter until the goods are registered in another jurisdiction, but in any event not beyond surrender of the certificate. After the expiration of that period, the goods are not covered by the certificate of title within the meaning of this section.

" * * * "

While *In re Paige* 679 F.2d 601 (6th Cir. 1982) was decided before the amendment of this Section which adopted the revision of 1972 of the U.C.C. which became effective January 1, 1979, the effect of *In re Paige, supra,* would not be changed and the original certificate of title issued by the State of Illinois would perfect the security interest on the original vehicle.

But, does that certificate of title perfect the security interest on the vehicle after the repairs were made? It is the claim of International that since the value of the parts from the damaged vehicle was greater than the value of the "glider kit", the vehicle retained its original identity. There were insufficient proofs to make a mathematical determination as to respective values, but the respective values were approximately equal. However, I do not agree that this should be the test. The importance of the V.I.N. (Vehicle Identification Number) has been emphasized by the courts. In *In re Elridge* 10 B.R. 835 (Bankr.E.D.Mich.1981), Judge Bobier held a security agreement to be invalid where the last four digits of the V.I.N. had no similarity to the actual number. At page 838, Judge Bobier stated:

"It is this Court's opinion that the vehicle identification number is the most important source of information concerning the 'reasonable description' requirement of a motor vehicle. With respect to Dodge motor vehicles, the first seven digits or letters of the vehicle identification number identifies the model number, engine size, year of production and the assembly plant where the vehicle was produced. The last six digits distinguish one specific vehicle from all other vehicles of the same model, engine, year and place of assembly. Therefore, when four of the last six digits in the vehicle identification number in a security agreement differ from the last six digits on the vehicle in the debtor's possession, or indicated on the certificate of title, it is impossible to say that the same vehicles are involved and that the Bank has been granted a security interest in the vehicle in the debtor's possession without a plenary suit and sufficient tracing evidence beginning with the factory. In other words, somewhere in the world there is a 1978 Dodge Van with a vehicle identification number of B21BE8K106658, as indicated in the security agreement. However, that is not the vehicle owned by the debtor, Izora Elridge.

"There is a compelling reason for requiring a creditor to identify an automobile by its correct vehicle identification number. It is the vehicle identification number which the Secretary of State office uses in determining whether the vehicle has already been issued a certificate of title and/or whether the vehicle has been stolen. This is a statutory duty imposed on the Secretary of State which states:

"'The department upon receiving application for original registration of a vehicle or any certificate of title shall

first check the engine and serial number or vehicle number shown in the application against the indexes of registered motor vehicles and against the index of stolen and recovered motor vehicles required to be maintained by this Act. (Emphasis Supplied.) M.C.L.A. § 257.220.' "

The "Illinois Vehicle Code" 111 Rev. Stat.Ch. 95½ § 3–104 provides that the application for first certificate of title *must* contain:

"2. A description of the vehicle including, so far as the following exists: Its make, year-model, identifying number, type of body * * *.' "

Section 3–107 provides that the certificate of title issued by the Secretary of State shall contain *inter alia* the vehicles identifying number.

Mich.Comp.Laws § 257.217 (Mich.Stat. Ann. § 9.1917 (Callaghan Cum.Supp.1984)) also requires that the application for a certificate of title contain "engine and serial number or vehicle number instead of engine and serial number."

Some years ago the motor number was the vehicle number, but, as the replacing of rebuilt or new engines for old became common, the V.I.N. became the more important number. I would therefore hold that that part of the vehicle that contains the V.I.N. becomes the new vehicle. Such is the understanding of the industry. The new serial number is on the "glider kit." A certificate of origin is furnished to the purchaser of the kit. In this case, the president of the dealership and repair shop cautioned the debtors to obtain a new title.

International points out the absurdity of such a conclusion, pointing out the possibility of a small part of the door jamb being destroyed so that the 99% of the undamaged truck would become a new truck. But, the industry is reasonable. Mr. Williams was asked about just such a possibility. His answer was that they would just take off the V.I.N. and rivet it onto the new door frame again.

But International also contends that *In re Paige, supra,* also holds that if no new title were obtained no harm would be done as any prospective purchaser or secured party would insist on examining the title and would realize that something was wrong and would make inquiry. Paige does not so hold nor do other courts. To carry such an argument to its ultimate conclusion, no title would be required to perfect as the lack of a title in itself would put an interested party on notice and lead him to make inquiry. Also the U.C.C. is not only protecting purchasers and secured parties with whom the owner will be inclined to cooperate, but also potential unsecured creditors and creditors with a judicial lien with whom the owner may not be willing to cooperate.

In *In re Paige, supra,* there was a certificate of title which did provide a proper V.I.N. All the court held was that it was immaterial how or where the title was obtained.

In *In re Kerr,* 598 F.2d 1206 (10th Cir. 1979) the court reversed the bankruptcy judge and district judge who had held that a bank had a perfected lien. There, the dealer had delivered to bankrupts the previous owner's certificate of title properly endorsed to show the bank's lien. But, the borrowers never applied for a Kansas title. There the court stated at pp. 1208–1209:

"The best remaining argument in favor of the bank's lien would seem to be that absent fraud the Kerrs could not pass good title to a new purchaser without going through the title registration process where the bank's lien would be recorded. But cf. *In re Dobbins,* 371 F.Supp. 141 (D.Kan.1973) (out of state registration). By contrast, the purpose of the UCC, mentioned above, is to place perfection of security interests solely within the power and prerogative of the creditor. When the law provides a simple and inexpensive way to protect the lien the creditor should be required to use it, if the creditor desires protection against failure of the debtor to register the car in Kansas."

Under the U.C.C. many states now provide for the perfection of a security interest by noting it on a certificate of title as does Michigan and Illinois. To hold, in spite of these provisions, there is perfection even though the statutes have not been followed, substituting the wisdom of this court for that of the state legislatures, would be an unconstitutional interference of the state's right to regulate the creation and perfection of security interests.

There being no perfection, the security interest of International is invalid as to the trustee. An order may be so entered.