In re B & S MOTOR FREIGHT, INC., Debtor,

Fred W. WOODSON, Trustee, Plaintiff,

v.

COMMUNITY BANK & TRUST COMPANY, Defendant.

Bankruptcy No. 84–01796.
Adv. No. 85–0051.

United States Bankruptcy Court, N.D. Oklahoma.

April 8, 1986.

James W. Keeley, Tulsa, Okl., for plaintiff.

Burk E. Bishop, Williamsport, Pa., for defendant.

## MEMORANDUM AND DECISION

MICKEY D. WILSON, Bankruptcy Judge.

This adversary proceeding came before the Court upon the complaint of Fred W. Woodson, the Trustee in bankruptcy (Trustee) for B & S Motor Freight, Inc., debtor, seeking an adjudication that liens noted on certificates of title for nine tractor trucks and one semitrailer [1] (vehicles) are unperfected in Oklahoma pursuant to Okla. Stat. tit. 47, § 23.2b and therefore, the Trustee's claim is superior to Community Bank and Trust Company's (Community Bank) claim to valid perfected superior liens. At the pre-trial conference held in this matter on August 7, 1985, the parties agreed to submission of the adversary proceeding to the Court for determination upon the stipulations of fact and the briefs to be filed with the Court. The stipulation of facts and the briefs having been filed with the Court by the respective parties, and the Court having reviewed and considered the same; the Court makes the following findings of fact and conclusions of law.

1. There is no question that the semitrailer is a vehicle as defined under applicable Oklahoma law. "Vehicles" are defined in Okla.Stat. tit. 47, § 23.1 as:

"Every device, in, upon, or by which any person or property is or may be drawn, except devices moved by human or animal power, when not used upon stationary rails or tracks."

See *In re Chief Freight Lines,* 37 B.R. 436 (Bankr.N.D.Okla.1984) wherein this Court held

## FINDINGS OF FACT

The defendant in this proceeding, Community Bank, does not have any right, title or interest in one 1981 Ford Cabb Chass, Serial No. 1FDJ37Z2BKA0413. The defendant executed a security agreement with the debtor, but failed to file a lien entry form. Community Bank does not have any right, title or interest in one 1981 Ford Courier Pickup, Serial No. JC2UA1228B0519070. No security agreement was executed by Community Bank and the lien entry form filed is insufficient standing alone. Finally, Community Bank does not have any right, title or interest in the itemized goods of Exhibit "B" and Exhibit "C" of Trustee's complaint.[2]

This case was commenced by the debtor filing a voluntary petition under Chapter 7 of the Bankruptcy Code (Code) on December 17, 1984. The Trustee by operation of law has in his possession various and sundry vehicles which are assets of the estate. Community Bank asserts that its interest in these vehicles is based on certificates of title issued by the State of Illinois. These certificates of title issued by Illinois describe the vehicles, show debtor's address at 4000 W. Jefferson, Joliet, IL 60453, and also note the name of Community Bank as the first lien holder. The vehicles in issue are identified as follows:

*Tractor Trucks*

1. 1978 Kenworth—Serial No. 265111K
2. 1978 Kenworth—Serial No. 261887K
3. 1978 International—Serial No. E2327HGA24092
4. 1980 Freightliner—Serial No. CA213HP180108
5. 1980 Freightliner—Serial No. CA213HL183872

that highway trailers are vehicles which must be perfected under Oklahoma law by filing the required lien entry form and paying the required fee. Certainly, semitrailers are highway trailers.

2. These two exhibits were compiled by the Trustee and identified the debtor's assets. Exhibit "B" listed the office machines of the debtor. Exhibit "C" listed the office furniture, tools, parts, and supplies of the debtor.

6. 1980 Freightliner—Serial No. CA213HL182124

7. 1980 Freightliner—Serial No. CA213HL182125

8. 1979 Freightliner—Serial No. CA213HM55373

9. 1979 Freightliner—Serial No. CA213HL172718

*Semitrailer*

1. 1979 Freightliner—Serial No. CA213HP161747

The debtor was duly incorporated on September 29, 1982, in the State of Oklahoma. The debtor purchased all the assets of B & H Motor Freight, Inc., its predecessor in interest, under the terms of an agreement dated October 1, 1982. Debtor's principal place of business and principal office have always been located in Tulsa, Oklahoma.

The debtor was never incorporated under the laws of the State of Illinois, and never maintained an office or place of business in Illinois. The debtor transported freight throughout the nation and had one terminal located at all times in Tulsa, Oklahoma. Occasionally, freight was transported through the State of Illinois. A "truck broker" named Allen Zimmerman of 4000 W. Jefferson, Joliet, Illinois was never an employee of the debtor and the debtor never maintained an office at this address.

The debtor was issued certificates of title on its vehicles in Illinois in order to avoid higher Oklahoma taxes. The debtor's vehicles have never been registered in Oklahoma and the debtor's vehicles have always been registered in Illinois.

The Trustee claimed certain insurance proceeds assigned to Community Bank by Calvin Starr, the deceased president of the debtor. The proceeds are not forthcoming to Community Bank, therefore, the Trustee's claim as to insurance claims is moot.

The Trustee's second cause of action which sought to avoid the transfer of $95,- 000.00 to Community Bank, pursuant to 11 U.S.C. § 547(b) is dismissed since the moneys transferred to Community Bank were personal assets of Calvin Starr and not assets of the debtor's estate.

## CONCLUSIONS OF LAW

■ At the outset, the Court will clean up the record and delineate the reasons for the Trustee's superior liens on the 1981 Ford Courier Pickup and the 1981 Ford Cabb Chass. First, with respect to the 1981 Ford Courier Pickup, no security agreement[3] was executed by Community Bank with the debtor which included this collateral. Okla.Stat. tit. 12A § 9–201 states in relevant part:

General Validity of Security Agreement. Except as provided by this Act a security agreement is effective according to its terms between the parties, against purchasers of the collateral and against creditors. . . .

A security agreement under the UCC is a contract. See *First Nat'l Bank & Trust Co. of Norman v. Security Nat'l Bank & Trust Co. of Norman*, 676 P.2d 837 (Okla. 1984). The language of a security agreement must be such as to lead to the conclusion that the parties intended to create a security interest. See *Mitchell v. Shepherd Mall State Bank*, 458 F.2d 700 (10th Cir.1972); *In re W. Southwestern, Inc.*, 23 B.R. 252 (Bankr.W.D.Okla.1982). Community Bank did not have a security agreement with the debtor and thus, does not have a security interest capable of perfection. The lien entry form filed by Community Bank is of no moment.

Second, Community Bank executed a security agreement which included the 1981 Ford Cabb Chass, but failed to file a lien entry form required by Oklahoma law; therefore, the claimed lien is unperfected pursuant to Okla.Stat. tit. 47, § 23.2b.[4]

---

3. Okla.Stat. tit. 12A, § 9–105(1) defines security agreement:

"Security agreement" means an agreement which creates or provides for a security interest;"

4. Okla.Stat. tit, 47, § 23.2b states in relevant part:

A.1. Except for a security interest in vehicles held by a dealer for sale or lease, as defined in Section 1–112 of this title, a security interest as defined in Section 1–201 of Title 12A of

See *In re Chief Freight Lines Co.*, 37 B.R. 436 (Bankr.N.D.Okla.1984). As a consequence, Community Bank does not have any right, title or interest in these two vehicles and the Trustee has superior liens on the 1981 Ford Courier Pickup and the 1981 Ford Cabb Chass pursuant to 11 U.S.C. § 544(a)[5] and Okla.Stat. tit. 12A, § 9–301(3).[6]

The stipulated question presented for decision is whether the Illinois certificates of title constitute valid perfected liens on the vehicles in issue, nine tractor trucks and one semitrailer, and are superior liens to those liens claimed by the Trustee. In other words, whether the Illinois certificates of title which indicate Community Bank's security interest constituted a superior perfection of those security interests under Oklahoma law. The Trustee correctly points out that neither the debtor nor Community Bank have filed a lien entry form in compliance with Okla.Stat. tit. 47, § 23.2b. As a result, the Trustee claims that Community Bank is thereby unperfected under Oklahoma law. Accordingly, the Trustee would be a superior lien holder who acquires a lien on all property of the debtor from the date of the filing the petition pursuant to Okla.Stat. tit. 12A, § 9–301(3). The Trustee also asserts that the Illinois certificates of title were wrongfully obtained in order to avoid higher Oklahoma taxes and contained an incorrect fraudulent address which is an infirmity that would enable the Trustee to avoid Community Bank's claimed superior lien.

Conversely, Community Bank argues that Okla.Stat. tit. 12A, § 9–103.1(2), see *infra*, applies to this adversary proceeding and that perfection by lien notation on the Illinois certificates of title is effective, valid, and superior to those liens alleged by the Trustee. The vehicles were titled in Illinois and the certificates of title reflect Community Bank's lien. The vehicles were not titled or registered in any state other than Illinois and no lien entry forms were submitted to the Oklahoma Tax Commission.

Community Bank argues that the multiple state transaction provisions of § 9–103.1(2) prevail over the provisions of § 23.2b. In other words, the failure to file a lien entry form in Oklahoma is not determinative in a case of multiple state transactions. Community Bank's liens are prominently noted on the only certificates of title ever issued on the vehicles in question and Community Bank retains possession of the

the Oklahoma Statutes, in a vehicle as to which a certificate of title may be properly issued by the Tax Commission shall be perfected only when a lien entry form ... and the required fee are delivered to the Oklahoma Tax Commission or one of its motor license agents.

It should be noted that § 23.2b was repealed on July 1, 1985, and replaced by a similar statute, Okla.Stat. tit. 47, § 1110. Section 23.2b is applicable to this adversary proceeding as the facts being decided occurred before the above-referenced amendment occurred.

**5.** 11 U.S.C. § 544(a) states:

(a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—

(1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists;

(2) a creditor that extends credit to the debtor at the time of the commencement of the case, and obtains, at such time and with respect to such credit, an execution against the debtor that is returned unsatisfied at such time, whether or not such a creditor exists; or

(3) a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such purchaser exists.

**6.** Okla.Stat. tit. 12A, § 9–301(3) states:

(3) A "lien creditor" means a creditor who has acquired a lien on the property involved by attachment, levy or the like and includes an assignee for benefit of creditors from the time of assignment, and a trustee in bankruptcy from the date of filing of the petition or a receiver in equity from the time of appointment.

same. In sum, Community Bank argues that the liens were noted on the certificates of title issued by Illinois, a state requiring such notation, therefore the liens continue to be perfected unless and until other certificates of title are issued by another jurisdiction.

In Oklahoma, the priority of interest in the vehicles is to be determined by Oklahoma law. See *Carroll v. Holliman,* 336 F.2d 425 (10th Cir.1964), *cert. denied,* 380 U.S. 907, 85 S.Ct. 889, 13 L.Ed.2d 795 (1965). The general rule in Oklahoma is that a financing statement must be filed in order to *perfect* a security interest according to Okla.Stat. tit. 12A § 9–302(1). Section 9–302(3) embodies the exceptions to the general rule. In particular § 9–302(3)(c) states:

> (3) the filing of a financing statement otherwise required by this article is not necessary or effective to perfect a security interest in property subject to:
>
>> (c) a certificate of title of another jurisdiction pursuant to the provisions of which delivery for indication or indication of a security interest on the certificate is required as a condition of perfection as stated in subsection (2) of Section 9–103.1 of this title.

Section 9–103.1(2) in pertinent part states:

> (2) Certificates of Title
>
>> (a) This subsection applies to goods covered by a certificate of title issued under a statute ... of another jurisdiction under the law of which indication or delivery for indication of a security interest on the certificate is required as a condition of perfection.
>>
>> (b) ... perfection and the effect of perfection or nonperfection of the security interest are governed by the law, including the conflict of law rules, of the jurisdiction issuing the certificate until four (4) months after the goods are removed from the jurisdiction *and thereafter* until the goods are registered in another jurisdiction, but in any event not beyond the surrender of the certificate. (emphasis added)

If this subsection governs, then the law of Illinois ("the jurisdiction issuing the certificate") applies, with the end result being that the security interest was properly perfected under Illinois law by notation of Community Bank's lien on the certificates of title. See Ill.Rev.Stat. ch. 26, § 9–302; ch. 95½, §§ 3–101, 3–102, 3–104, 3–107, 3–202 (1985).

A literal reading of § 9–103.1(2)(b) indicates that it should be applied whenever a certificate of title is issued by a foreign jurisdiction, which, as a condition of perfection, requires notation of the security interest on the certificate of title. Illinois does in fact require "indication on a certificate of title as a condition of perfection" and therefore, would appear to satisfy the requirement.

The Trustee cites *In re Paige (Uhle v. Parts and Trucks* ), 3 B.R. 115 (W.D.Mich. 1980) as authority and as a "case directly on point" in both its Memorandum and Supporting Briefs for the proposition that a certificate of title which reflects an incorrect address does not perfect a security interest. The case is reported at 3 B.R. 115 and concluded that the debtor was a nonresident (resident of Michigan), and an Illinois certificate of title was not *required* under UCC § 9–103(4), and thus the multiple state transactions provision was inapplicable. Unfortunately, for the Trustee, the bankruptcy court decision was reversed by the Sixth Circuit. See *In re Paige,* 679 F.2d 601 (6th Cir.1982). The Trustee and attorney for the Trustee, being known experts in the field of commercial law in the Court's eyes, brings chagrin to the Court in referring the Court to a decision which has been reversed and lends credence to the fundamental rule that all cases quoted to a Court should be determined to be valid existing law, which I am certain with this comment will be the case in future authority given to this Court.

*In re Paige* is factually similar to this adversary proceeding before the Court. The issue in that case was "whether the Illinois certificate of title which indicated the appellant's security interest constituted

perfection of that security interest under Michigan law". 679 F.2d at 602. The bankruptcy judge erroneously believed Illinois law did not *require* a certificate of title to be issued to a non-resident (Michigan resident) and therefore *UCC* § 9–103(4) did not apply. However, the Sixth Circuit specifically rejected this argument:

It does not appear to be the purpose of the subsection to defeat security interests which are properly noted on a valid certificate merely because the certificating jurisdiction did not *require* the debtor to obtain a certificate of title from that jurisdiction.

*Id.* at 602.

■ This Court upon examination of relevant caselaw holds that the liens of Community Bank noted on the Illinois certificates of title are valid, perfected liens under Illinois law and therefore, are superior under Oklahoma law to the liens claimed by the Trustee. See *In re Angier*, 684 F.2d 397 (6th Cir.1982); *In re Paige*, 679 F.2d 601 (6th Cir.1982); *Strick Corp. v. Eldo-Craft Boat Co., Inc.*, 479 F.Supp. 720 (W.D.Ark.1979); *In re Sexton*, 18 B.R. 730 (Bankr.E.D.Tenn.1981); *In re Dawson*, 21 UCC Rep. 293 (E.D.Mo.1976); *In re Foster*, 611 P.2d 232 (Okla.1980).

The Oklahoma Supreme Court decided a question certified by the Tenth Circuit Court of Appeals in the case of *In re Foster*. The certified question considered was: "Where security interest in a motor vehicle arose under New York law, given the facts below, is perfection of the security interest within the state of Oklahoma controlled by the law of Oklahoma or the law of New York....?" Id. at 232. It should be noted that the Oklahoma Supreme Court was interpreting Okla.Stat. tit. 12A § 9–103(3) and (4). This statutory section was amended by the Oklahoma Legislature in 1981 and the relevant statutory section is now Okla.Stat. tit. 12A, § 9–103.1(2)(a) and (b) (A comparison of the statute and amendment cited reveals no material change that is relevant herein). The Oklahoma Supreme Court held:

The ultimate interpretation is that one who has a security interest in an automobile, perfected in a state which requires the issuance of a certificate of title, and the listing thereon of a security interest as a condition of perfection, does not have to protect the security interest by any further action in a non-title state to which the property may thereafter be removed.

*Id.* at 235. The certificates of title with Community Bank's lien noted thereon were perfected in accordance with Illinois law, therefore, the Illinois certificates of title with Community Bank's liens noted thereon are superior to those liens claimed by the Trustee.

The Trustee's second contention appears to be an amalgamation of two propositions: (1) that the debtor fraudulently obtained the certificates of title from an inappropriate jurisdiction and (2) that to permit perfection of a security interest on foreign certificates of title regardless of whether the foreign jurisdiction is the debtor's chief place of business is destructive of the "notice" policy of UCC Article 9. The Trustee, in his Memorandum Brief at 7, cites Ill. Stat.Ann. ch. 95½ § 63–208a(2) for the proposition that "a Certificate of Title may be suspended if it was fraudulently or erroneously issued.". On closer examination by this Court, the statute the Trustee cites does not exist. Alas, a scrivener's error? It should be noted that considerable time was expended in attempting to decipher this statute referred to by plaintiff's counsel (overcited number).

Several courts have addressed the Article 9 "notice" requirements in cases with facts similar to those in the present adversary proceeding. See *In re Angier, In re Dawson*, and *In re Paige, supra*. All three cases involved certificates of title procured in one state through the use of an incorrect address by a resident of another state. *In re Angier* cited both *Paige* and *Dawson* and noted:

In both cases, the court looked to the purpose of Article Nine of the Uniform Commercial Code—notice to subsequent

creditors. Here, as in those cases, the notation of White Motor Company's security interest on the Ohio Certificate of Title fulfills that purpose. A potential creditor need look to only one place—the certificate of title, regardless of issuing state—to discover the security interest. As the court stated in *Paige,* [i]f the debtor cannot or will not produce the title certificate the potential creditor is immediately on note that he acts at his own risk. *In re Paige, supra,* at 603.

684 F.2d at 399; see also *In re Sexton,* 18 B.R. 733, 735 (Bankr.E.D.Tenn.1982) (constructive notice with liens noted on certificate of title).

Finally, this Court will address the fraudulent address and chief place of business argument of the Trustee. *In re Paige* stated:

> The introduction of a standard which requires the certificating state to be the state of the debtor's chief place of business may cast uncertainty on the perfection of security interests in vehicles used in more than one jurisdiction. The advantage of a literal interpretation of section 9–103(4) is that a potential creditor need only look to one place—the certificate of title—to discover prior security interests.... [T]he interpretation offered by Judge Nims would require a potential creditor not only to examine the debtor's certificate of title but also to determine whether it was issued by the state of the debtor's chief place of business. We do not believe the drafters of the UCC intended to complicate commercial transactions by such a requirement.

679 F.2d at 603–04. The Trustee also argues that the debtor committed fraud by titling the vehicles in Illinois in order to avoid higher Oklahoma taxes and this infirmity should invalidate the Illinois certificates of title. A similar argument was decided in *In re Angier* :

> However, the fact that [debtor] successfully avoided paying sales tax on the truck does not *per se* constitute fraud. Any determination of tax liabilities lies with the proper state authorities. In any

event, we see no connection between [debtor's] tax liability and the validity of his Ohio title. The Uniform Commercial Code was not drafted to enforce local tax laws but to protect commercial transactions.

684 F.2d at 400.

The final problem that this Court must come to terms with is the construction of the language contained in Okla.Stat. tit. 12A, § 9–103.1(2)(b) quoted *supra* ; specifically, whether the Illinois certificates of title remained valid and effective in Oklahoma. This Court finds that *Strick Corp. v. Eldo-Craft Boat Co., Inc.,* 479 F.Supp. 720 (W.D.Ark.1979) is persuasive on this construction question. Arkansas has a statute very similar to Oklahoma's in this respect. The argument presented in *Strick* was that the security interest required a reperfection of the security interest within four months after the vehicles were brought into the state of Arkansas. The court stated:

> It is the opinion of this Court that the section just quoted continues in force the perfection of a security interest noted on a foreign certificate of title *until a certificate of title has been issued by another jurisdiction.*

*Id.* at 725 (emphasis added). The Uniform Commercial Code, as noted by the court:

> [C]learly demonstrates that it is the intention of the statute to allow the security interest in a vehicle perfected in a state other than Arkansas by required notation on a certificate of title issued by that state to remain perfected in this state for a period of four (4) months, *and so long thereafter as no certificate of title is issued by this state.*

*Id.* at 726 (emphasis added).

In conclusion, the Court finds that Community Bank's liens noted on the Illinois certificates of title constitute valid perfected liens under Illinois law and therefore, are superior liens under Oklahoma law to those liens claimed by the Trustee with respect to the nine tractor trucks and one semitrailer. Accordingly, the defendant has a valid, perfected, secured interest in

and to the nine tractor trucks and one semitrailer, and accordingly the defendant's interests in and to said nine tractor trucks and one semitrailer are superior to the right, title and interest of the plaintiff. All other matters decided herein are expressly incorporated in this decision by reference.

This decision constitutes the findings of fact and conclusions of law required by Bankruptcy Rule 7052 in this core proceeding, and this Court shall enter an appropriate judgment.

AND IT IS SO ORDERED.