## J.L. MALONE & ASSOCIATES, INC., Appellant,

### v.

## The UNITED STATES, Appellee.

### No. 89–1056.

United States Court of Appeals,
Federal Circuit.

July 13, 1989.

Thomas J. Wingfield, III, of Varner, Stephens, Wingfield, McIntyre & Humphries, Atlanta, Ga., argued for appellant. With him on the brief was Peggy J. Caldwell, of Varner, Stephens, Wingfield, McIntyre & Humphries, Atlanta, Ga.

Theodore R. Carter, III, of the Civ. Div., Dept. of Justice, Washington, D.C., argued for appellee. With him on the brief were John R. Bolton, Asst. Atty. Gen., David M. Cohen, Director, and Robert A. Reutershan, Asst. Director. Of counsel was Anna C. Maddan, of the VA Marketing Center, Hines, Ill.

Before FRIEDMAN, NIES, and MAYER, Circuit Judges.

FRIEDMAN, Circuit Judge.

This is an appeal from a decision of the Veterans Administration Board of Contract Appeals rejecting a contractor's appeal from the contracting officer's decision denying the contractor an equitable adjustment under a contract. The contractor sought compensation for (1) the additional cost it incurred for expanding the capability of an existing computer, as the contract required, rather than substituting a different computer, as the contractor proposed, and (2) the delay damages it incurred because of the government's alleged unreasonable delay in considering the proposed substitute. The Board denied both of these claims. *Appeal of J.L. Malone & Assoc.*, 88–3 B.C.A. ¶ 20,894 (VABCA 1988). We affirm.

# I

The Veterans Administration (VA) planned to replace the outdated fire alarm system at its Medical Center in Lexington, Kentucky. The VA's design called for integrating the new fire alarm system with the Center's recently installed heating ventilation and air conditioning (HVAC) system, which was operated by a JC–80 computer manufactured by Johnson Controls. Integration was to be accomplished by expanding the memory of the existing JC–80 computer so as to allow it also to operate the new fire alarm system.

The VA's Invitation for Bids described the work as follows:

Services of contractor to furnish all labor and materials ... to remove existing fire alarm system including transmitter, signaling devices and control panels and replace with a frequency multiplexed system *utilizing and expanding existing* transmitters, panels and *Johnson [Controls] JC–80 computer* at the Veterans Administration Medical Center, ... per specifications and Drawings. [Emphasis added.]

The specification stated at section 808–1(E) that:

E. The contractor shall furnish, install and place in operating condition a fire safety system as herein described. The fire safety system shall operate as *an integral part of the existing computerized building automation system....* [Emphasis added.]

The specification further provided that the new central processing unit (C.P.U.) was to be provided with 64,000 words of memory and that "[t]he existing C.P.U. shall be provided with an additional 32 thousand words of memory."

The contract contained two so-called "or equal" clauses that permitted the contractor to use substitutes of equal quality for products the contract specified.

General Provision 9 provided in pertinent part:

(a) ... Unless otherwise specifically provided in this contract, reference to any equipment, ... by trade name, make, or catalog number, shall be regarded as establishing a standard of quality and shall not be construed as limiting competition, and the Contractor may, at his option, use any equipment, ... which in the judgment of the Contracting Officer, is equal to that named.

The second "or equal" clause appears in section 8 of the specifications describing the fire alarm system:

800–5. Equipment Ratings And Approval Of "Equal Equipment"

B. Prior to construction, written approval shall be obtained by the Contractor from the Contracting Officer for any equipment which differs from the requirements of the drawings and specifications.

....

3. Any other items required for the satisfactory installation of the equal equipment shall be furnished and installed at no additional cost to the Government. This includes but shall not be limited to changes to branch circuits, circuit protective devices, conduits, wire, feeders, controls, panels, ....

800–10. Drawings and Specifications: The drawings and specifications indicate

the requirements for the systems, equipment, materials, operation, quality, etc. They shall not be construed to mean limitation of competition to the products of specific manufacturers.

There were four bids on the contract. The appellant's bid of $1,456,502 was more than $120,000 lower than the second lowest bid.

In preparing its bid the appellant obtained price quotations for fire alarm systems from two subcontractors, Johnson Controls and Honeywell. The Honeywell system was $152,000 lower than the Johnson Controls system.

The appellant was awarded the contract on December 7, 1981.

On April 19, 1982, the appellant made its first fire alarm submittal, which proposed a Honeywell fire alarm system separate and independent from the Johnson Controls HVAC system. The agency rejected this system as not complying with the contract specifications.

The appellant's second submittal, dated May 7, 1982, again proposed a separate Honeywell system. The proposal stated that the Honeywell system "meets and or exceeds every requirement" of the specifications "with the single exception of operating as an integral part of the existing computerized building automation system." The submittal further stated that "[t]he specification requirements for utilizing and expanding the existing Johnson Control[s] JC–80 computer and supplying a new identical 64K memory computer that will function as a back-up to the existing JC–80 computer cannot be provided due to the obsolescence of the existing computer." The agency rejected the second proposal on June 1, 1982.

The appellant's third submittal, dated July 28, 1982, the submittal here at issue, proposed to remove the existing JC–80 computer and furnish a Honeywell computer that would be capable of operating both the new fire alarm system and the existing HVAC system.

The submittal was reviewed for the VA by the engineering firm of Watkins & Associates. It informed the VA that the "proposed Honeywell system is not an integral part of the existing [computerized building automation] system," as required by paragraph 808–1(E) of the specifications, "but a replacement of it," and, therefore, in Watkins' opinion, the proposal "is an exception to the specifications and should not be honored at this time because this option was not given to the other bidders." The memorandum noted that although the VA "would be getting all new equipment and wiring for both the fire alarm as well as the HVAC control," there were at least eight disadvantages of accepting the Honeywell system in lieu of expanding the existing JC–80 system, the foremost of which would be the involvement of the VA in "legal problems with the other bidders."

At a September 28, 1982 meeting between the appellant and the VA, the appellant pointed out that the third submittal work would be done at no additional cost to the government. The contracting officer requested that the appellant provide, among other things, a statement "address[ing] the company's interpretation of the legalities of accepting this proposal and avoiding potential litigation." The appellant's response was that other bidders were "on notice that [the] 'or equal' provision was included in the referenced contract ... and were free to let that fact [a]ffect their bid in any way they so chose."

At a meeting the contracting officer held on October 14, 1982 with officials of Johnson Controls, at their request, a Johnson Controls representative "implied that if the Honeywell submittal were approved and the Johnson [Controls] equipment removed, a protest would be lodged through one or all of the other bidders."

In response to a request from the contracting officer that the VA's Office of General Counsel provide a legal opinion concerning the acceptability of the appellant's third submittal, the Assistant Deputy Administrator for Procurement and Supply informed the Center's Director on November 19, 1982, that:

Our recommendation, with the concurrence of General Counsel, is to enforce

the requirements of the contract. The contractor must install a fire alarm system which will operate as an integral part of the existing computerized building automation system. If the contractor fails to provide a submittal which meets specifications, default action should be initiated.

The contracting officer so notified the appellant by letter on November 19, 1982:

The specifications state that "the fire safety system shall operate as an integral part of the existing computerized building automation system." The system is interpreted as meaning the JC80 computer which must, therefore, remain in place. Since your submittal would require replacing the JC80, it is considered not in conformance with the specifications.

The appellant performed the contract using the Johnson Controls equipment. It then filed a claim of $292,459.07, covering (1) the $152,000 difference between the price for the Johnson Controls equipment and the Honeywell equipment, (2) increased installation costs, (3) project delay costs for overhead of $76,839.27, and (4) markups for overhead and profit.

The contracting officer denied the claim for a price adjustment, and the appellant appealed that decision to the Veterans Administration Board of Contract Appeals (Board). The Board denied the appeal. It held that "the 'or equal' provisions of the contract do not permit a contractor to remove and replace existing items of equipment which have been specified to remain." The Board explained:

Those cases [holding that a contractor is permitted under an "or equal" provision of a contract to substitute items from another source if they are equal to the items from the source designated in the contract] do not discuss a situation, such as here, where a contract requires that a new system to be installed must be integrated with an existing system, and that certain specific items of equipment which are part of that existing system are to remain, be utilized and expanded.

The Board further stated that "[although] the evidence indicates that [the Honeywell system] was more advanced than the older existing computer" and the government "would have received a more state-of-the art computer with no additional cost," the issue "is not whether the Government exercised good judgment in drawing up its contract, or whether it would have benefitted by allowing [the appellant] to replace its existing equipment"; rather "[t]he integrity of the Government's competitive procurement system is involved." The Board explained:

What [the appellant] proposed was a major change in the contract, which no reasonable bidder, in our opinion, would have anticipated as permissible when preparing its bid. The requirement for integrating the new system with the existing system and retaining the JC–80 computer was clear. It would have been unfair to the other bidders to have permitted such a basic change in the contract after award....

If [the appellant], or any other bidder, felt that the proposed contract was unduly restrictive of competition by requiring that the existing Johnson Controls computer be utilized and expanded, and that the new fire alarm system be integrated with the existing system, rather than permitting replacement of the existing system, it should have protested prior to award.

The Board also rejected the appellant's delay claim, ruling that the contracting officer had not unreasonably delayed her decision on the third submittal.

One Board member dissented. He argued that under our predecessor court's decision in *Jack Stone Co. v. United States*, 344 F.2d 370, 170 Ct.Cl. 281 (1965), the appellant was justified in substituting the Honeywell for the Johnson Controls computer. He stated that "where the Government has effectively specified the furnishing of a Johnson Controls system, without valid justification therefor and without specifically and unequivocally stating in the solicitation that only that product will be accepted, then the standard of quali-

ty clause comes into play to permit the Contractor to offer any equal system by another manufacturer, and the Government is expected to make a good faith evaluation thereof and to permit the furnishing of such equal if the Government determines that such equal will meet its functional requirements."

## II

■ A. The appellant's principal contention is that under the "or equal" clauses of the contract, it had the right to substitute the Honeywell computer for the existing Johnson Controls computer because the former was equal in quality to the latter. This argument rests upon a misconstruction of the contract.

The contractual reference to the Johnson Controls computer was not intended to define quality or type of product to be used. Its purpose was to describe the work the contractor was to perform. As the contractual specification stated, that work was to "replace" the "existing fire alarm system" by utilizing and expanding the existing "Johnson JC–80 computer," so that the new fire alarm system would "operate as an integral part of the existing computerized building automation system." In other words, the new fire alarm system was to be integrated with the existing computerized building automation system by "utilizing and expanding" existing equipment, including the Johnson Controls computer.

As the contract specifically pointed out, an essential element of the new fire alarm system was its utilization and expansion of the existing computer. The specifications explained how that computer was to be utilized and expanded to make it an "integral part" of the "existing computerized building automation system." They required that "[t]he new [central processing unit] shall be provided with 64 thousand words of memory. The existing C.P.U. [central processing unit, which included the Johnson Controls computer] shall be provided with an additional 32 thousand words of memory."

There is nothing in the contract that authorized, or even suggested, that Malone could remove the existing Johnson Controls computer and substitute a Honeywell computer. As the Board correctly noted:

> What Malone proposed was a major change in the contract, which no reasonable bidder, in our opinion, would have anticipated as permissible when preparing its bid. The requirement for integrating the new system with the existing system and retaining the JC–80 computer was clear. It would have been unfair to the other bidders to have permitted such a basic change in the contract after award.

In at least its second submittal to the contracting officer, the appellant recognized that the existing Johnson Controls computer was to be utilized and expanded and that any other design was at variance with the contractual requirement. The appellant there acknowledged that although the existing JC–80 computer was to be utilized and expanded, that "cannot be provided due to the obsolescence of the existing computer." The submittal further recognized that the fire alarm system was to operate as an integral part of the existing building automation system but maintained that that requirement was "impossible."

There was a similar recognition of the requirement in the statement that "[t]he requirement for the existing C.P.U. to be provided with an additional 32 thousand words of memory could be accomplished by installing a 32K memory plane of the same type as the existing memory plane if one could be found."

"It is settled that the Government is entitled to obtain precisely what it contracts for as long as it does not mislead the contractor." *American Elec. Contracting Corp. v. United States,* 579 F.2d 602, 608, 217 Ct.Cl. 338 (1978). The VA made a design decision that the existing JC–80 computer would be utilized and expanded. The Board found that the VA's primary reason for doing so was that "the existing equipment had been in use for about a year and a half, had been debugged and would presumably be 'cost effective.' " We cannot say that that design decision was impermissible or that there was any reason

why the government was not entitled to obtain exactly what its contract specified.

The Board found that the Honeywell computer that the appellant proposed to install in its third submittal was more advanced than the existing JC–80 computer that the contract specified was to be utilized and expanded. The government, however, was not required to alter the basic design requirements of the contract. The government carefully considered the appellant's third submittal and justifiably concluded that the major change the appellant proposed would be inappropriate for various reasons, including the likelihood of protests by unsuccessful bidders.

B. The appellant relies heavily on *Jack Stone Co. v. United States*, 344 F.2d 370, 170 Ct.Cl. 281 (1965). In that case, a contract for the renovation of an electric power and a fire alarm system provided that:

> The Contractor shall furnish all labor and materials necessary to install complete all additions and revisions to the existing Fire Alarm System as herein specified and as shown on Drawings.... The existing system is of Sperti Faraday manufacture. All new equipment and parts furnished shall be of the same manufacturer to insure full and satisfactory performance of the completed system.

344 F.2d at 372. The specifications contained sixteen separate references to Sperti Faraday items. The contract also contained the following "or equal" provision:

> Reference in the specifications to any article, device, product, materials, fixture, form or type of construction by name, make, or catalog number, shall be interpreted as establishing a standard of quality, and not as limiting competition. The Contractor may make substitutions equal to the items specified if approved in advance in writing by the Contracting Officer.

The Court of Claims, reversing the Board, held that the contract authorized the contractor to use components manufactured by another company that were the equal of the Sperti Faraday components. The court stated that the effect of the "or equal" provision of the contract was that "under this contract plaintiff was not required to furnish Sperti Faraday equipment alone, but could supply articles from another source if they were equal to Sperti Faraday and if the consent of the contracting officer was sought in advance." 344 F.2d at 376.

*Jack Stone* did not address the situation here of a contractor who proposes to remove an existing item of equipment, which the contract expressly required was to be "utilized and expanded," and replace that item with one manufactured by a different source. In *Jack Stone*, the contractor proposed merely to use a "different manufacturer's components *in conjunction with* the existing fire alarm [system]." 344 F.2d at 372. In *Jack Stone*, the reference to Sperti Faraday products, in light of the "or equal" clause, was a designation of the kind and quality of product to be used.

In the present case, on the other hand, the reference to the Johnson Controls computer was a description of the work the contractor was to perform, namely, the replacement of the existing fire alarm system with a new system that would utilize and expand the Johnson Controls computer. Unlike the contract in *Jack Stone*, here the "or equal" clause did not authorize the contractor to substitute another product, even if it was of equal quality, for the Johnson Controls computer that the contract required the contractor to utilize and expand. Indeed, the general "or equal" clause of this contract applied "[u]nless otherwise specifically provided in this contract." The "utilizing and expanding" and the "integral part" provisions of the contract "otherwise specifically provided."

C. The appellant further contends that if the contract is construed to require it to utilize the existing Johnson Controls computer, the contract would be a "sole source" procurement that would require compliance with the provisions governing such procurement, and would be inconsistent with the "or equal" provisions of the contract. Our conclusion that the contractual requirement to utilize the existing Johnson Controls computer described the work to be performed and not the product

to be used in performing the contract undermines the basis for this argument. A contractual requirement that in performing the work the contractor must utilize an existing item of equipment, which is identified by its manufacturer, does not make the contract a sole source procurement.

### III

■ The appellant also asserts a claim for the additional costs it incurred as a result of the government's alleged delay in considering but rejecting its submittals for the substitution of a Honeywell computer.

The appellant's brief suggests that "a fifteen month delay" was incurred because "the Contracting Officer should have notified [it] that the Honeywell system was not acceptable at the time of its first submittal in April of 1982." The appellant conceded at oral argument, however, that because the first two submittals did not comply with the contract, the delay claim properly covers only the approximately four months that the contracting officer spent in considering the appellant's third submittal.

The Board found that there was "no unreasonable delay in the review of the third submittal." The Board explained that that submittal proposed "a major change in the scope of the contract, with implications affecting other bidders," which required "extensive discussions, meetings, correspondence, and even a site visit to other Honeywell installations to view the Honeywell product," as well as a request for a legal opinion from the VA General Counsel. We agree with the Board that four months was not an unreasonable amount of time for the government to have investigated and acted on the appellant's submittal.

The appellant argues that the contracting officer should have been aware that only Johnson Controls equipment would have been acceptable and therefore should have so notified it as soon as it presented the third submittal. The appellant ignores the representations made in the second submittal that the new fire alarm system could not be integrated with the existing computerized system and, further, that the Johnson Controls computer was obsolete, and its arguments in the third submittal designed to convince the VA to permit the substitution of the Honeywell computer. The government extensively considered this proposal, and did not finally decide to reject it until four months after it was submitted. The contracting officer was fully justified in not immediately rejecting the third submittal.

### CONCLUSION

The decision of the Veterans Administration Board of Contract Appeals denying the appellant an equitable adjustment is

AFFIRMED.