623 So.2d 549 (1993)
HARTFORD INSURANCE COMPANY OF THE MIDWEST, Appellant,
v.
Emma E. ATKINSON and John Atkinson, her spouse, Appellees.
No. 92-03064.
District Court of Appeal of Florida, Second District.
August 6, 1993.
Rehearing Denied September 2, 1993.
James E. Bogos and John N. Jenkins of Shofi, Smith, Hennen, Jenkins, Stanley & Gramovot, P.A., Tampa, for appellant.
Irene H. Sullivan and Gail F. Moulds of Harris, Barrett, Mann & Dew, St. Petersburg, for appellees.
RYDER, Acting Chief Judge.
Hartford Insurance Company of the Midwest appeals an order granting summary final judgment in favor of Emma E. Atkinson and John Atkinson, the insureds. We reverse because the uninsured motorist election form is unambiguous as a matter of law.
The Atkinsons purchased a motor vehicle liability insurance policy with bodily injury coverage limits of $100,000/$300,000 and lower uninsured motorist coverage limits of $10, 000/$20,000. They rejected in writing higher limits for uninsured motorist coverage. One year later, the policy was renewed under the same terms and conditions. Together with the renewal premium notice, Hartford sent the insureds a form used to comply with the annual notification provisions of section 627.727(1), Florida Statutes (1991). This form *550 had been approved by the Florida Department of Insurance, and it is uncontroverted that it met all of the requirements of section 627.727.
By affidavit, Mr. Atkinson stated that he read the front page of the form and chose not to sign it because he did not wish to reject uninsured motorist coverage or to select lower uninsured motorist limits. He therefore assumed that he had additional uninsured motorist coverage and that he would be billed an additional amount for the increased coverage. He never noticed the other side of the form which provided an election for increased coverage limits. The Atkinsons chose not to sign any portion of the form and never returned it to Hartford.
During the renewal period of the policy, Emma Atkinson was injured in an automobile accident. The Atkinsons filed a claim for uninsured motorist benefits up to the $100, 000/$300,000 limits. Hartford contended that they were entitled to the lower limits of $10,000/$20,000 because they failed to sign and return the election form and moved for summary judgment.
The trial judge ruled that the form was ambiguous because the side of the form used to reject uninsured motorist coverage or, alternatively, to select lower coverage did not refer the reader to the other side used to increase uninsured motorist limits. He also accepted appellees' attorney's argument that the presence of the Hartford logo on the rejection side of the form might lead one to consider only that side of the form. Because he determined that the form was ambiguous, he apparently concluded that the insureds could not have made a knowing election. This appeal ensued.
There is no question here that the insureds fully understood the effect of their original written rejection of higher uninsured motorist limits. Section 627.727(1) provides that where the insured has initially selected limits of uninsured motorist coverage lower than his bodily injury liability limits, higher limits of uninsured motorist coverage need not be provided in the renewal policy unless the insured requests higher uninsured motorist coverage in writing. "[W]hen the insurance contract is renewed an insured has the responsibility to consider the information supplied to him with the premium notice... . [W]here the insurance company complies with the annual notice provision of section 627.727(1) the insured's failure to act upon that notice at the time of renewal constitutes an affirmative waiver of uninsured motorist coverage limits higher than those specified in the purchased policy." Marchesano v. Nationwide Property & Casualty Ins. Co., 506 So.2d 410, 413 (Fla. 1987). When the insurance contract is renewed an insured has the responsibility to consider the information supplied to him with the premium notice. Marchesano at 413. The Atkinsons must take responsibility for their own failure to read and respond to the enclosed notices.
The question arises whether the two-page format alone created an ambiguity rendering invalid the statutory presumption of waiver. Where, as here, the facts are not in dispute, and there is an ambiguity in the policy, it is within the province of the trial judge to resolve the ambiguity as a matter of law. Ellenwood v. Southern United Life Ins. Co., 373 So.2d 392, 394 (Fla. 1st DCA 1979). The construction of the terms of an unambiguous contract is a question of law for the court. Cushman & Wakefield of Florida, Inc. v. Williams, 551 So.2d 1251, 1254 (Fla. 2d DCA 1989). As such, this court is on an equal footing with the trial judge as an interpreter of the contract because that interpretation is based solely on the written document. Cushman at 1254.
We note that the form is captioned in large type "You have a choice to protect yourself against uninsured motorists," and begins with the salutation "Dear Policyholder." The form continues with an explanation of various options concerning uninsured motorist coverage. This appears to be the first page, and it refers the reader to the other side of the form which provides for a written rejection of uninsured motorist coverage or lower limits. The reverse side of the form contains the notice in the requisite 12-point bold type specified in the statute. Mr. Atkinson apparently read the second page only. We conclude that the fact that the insured *551 did not read both sides of the form does not render the language ambiguous.
"[T]he Legislature, by intending ... that an insured be bound by his failure to exercise the option provided to him in the written notification required by section 627.727(1), intended to counterbalance the ... heavy burden upon an insurer to obtain a knowing rejection of uninsured motorist coverage limits at the time the insurance was initially purchased." Nationwide Property & Casualty Ins. Co. v. Marchesano, 482 So.2d 422, 426 (Fla. 2d DCA 1985), approved, 506 So.2d 410 (Fla. 1987).
We hold that the trial court erred in granting summary final judgment in favor of the Atkinsons and, therefore, reverse and remand for further proceedings.
Reversed and remanded.
PARKER[*] and PATTERSON, JJ., concur.
NOTES
[*] Judge Parker participated in the decision, but did not participate in the oral argument.