651 So.2d 149 (1995)
FLORIDA BOARD OF REGENTS, Appellant,
v.
MYCON CORPORATION, Appellee.
No. 93-748.
District Court of Appeal of Florida, First District.
February 16, 1995.
Rehearing Denied March 28, 1995.
*150 Robert A. Butterworth, Atty. Gen., Kathleen E. Moore and Paul J. Martin, Asst. Attys. Gen., Dept. of Legal Affairs, Tallahassee, for appellant.
John S. Vento and Dinita L. James of Trenam, Simmons, Kemker, Scharf, Barkin, Frye & O'Neill, P.A., Tampa, for appellee.
ERVIN, J.
The Board of Regents appeals a final judgment entered against it and in favor of Mycon Corporation following jury trial on Mycon's breach of contract action. We agree with the Board that the trial court, in considering Mycon's motion for partial summary judgment, erroneously limited the facts and issues to be tried before the jury and, both *151 during the course of trial and at the conclusion thereof, gave misleading instructions to the jury, thereby prejudicing the Board. We therefore reverse the judgment and remand the case for new trial. Our disposition of Issues I and II moots consideration of the remaining issues.
Mycon was the successful low bidder on a competitive bid project for the construction of a new social science building at Florida Atlantic University, Boca Raton, Florida. The specifications and plans, calling for the construction of three circular stair towers and an auditorium to be formed of architectural concrete, contain the following clause setting forth the duties to be performed by the contractor:
3.3.1 The contractor shall supervise and direct the Work, using the Contractor's best skill and attention. The Contractor shall be solely responsible for and have control over construction means, methods, techniques, sequences and procedures and for coordinating all portions of the Work under the Contract, unless Contract Documents give other specific instructions regarding these matters.
Additionally, contractor specification 4.2.3 explicitly provides that the architect shall not have control over "construction means, methods, techniques, sequences or procedures, ... since these are solely the contractor's responsibility."
Regarding the formation of the architectural concrete, specification 03100.03(b)(2), relating to the construction of steel forms, requires that such forms "provide a skin plate[[1]] with a smooth, non-corded `true-radius' forming surface, equal to that manufactured by Symons, see section 03330.architectural concrete." Specification 03330.05(c)(3)(e), pertaining to the construction of steel forming systems,[2] contains an identical requirement for the provision of skin plates.
Mycon failed to complete the project within the time provided in the contract, and the Board withheld payment of certain sums to Mycon for substandard concrete work and liquidated damages. Thereafter Mycon filed a breach of contract action against the Board, alleging essentially that the breach was caused by the Board's specification in the contract of a proprietary forming system or of a system approved by the Board which could not meet the specified contract tolerances or allow construction of certain portions of the architectural concrete in a costeffective and time-efficient manner. Subsequently, Mycon moved for partial summary judgment on the issue of liability, contending that the contract documents required the use of a specified proprietary concrete forming system manufactured only by Symons and that the system was unable to produce concrete which met the design tolerances prescribed in the contract; therefore, Mycon was prohibited from substituting or requesting substitution of a system other than the Symons forming system after submission of its bid. In response, the Board asserted that the specifications in the contract regarding the surface features of the skin plate to be used with a concrete forming system were not proprietary, and that genuine issues of material fact existed regarding whether Mycon was required to use the Symons forming system or whether it was permitted to substitute another system or request substitution of same.
Although it denied Mycon's motion for partial summary judgment, the court, nonetheless, pursuant to Florida Rule of Civil Procedure 1.510(d), limited the following facts and issues to be tried: (1) whether Mycon used the proper Symons forms; (2) whether the Symons forms were defective, or whether Mycon used the forms correctly; and (3) whether the use of improper or defective Symons forms or the incorrect use of the proper Symons forms resulted in substandard work. Being unsure from the court's order which facts and issues existed without substantial controversy, the Board moved for clarification. Mycon replied that the trial court made certain statements during the hearing on Mycon's motion for partial summary judgment to the effect that the Board's specification of the Symons forming system *152 in the contract meant that the contractor would be able to comply with the contract; consequently, other issues, such as whether Mycon had the right to substitute other forming systems, were not appropriate for jury consideration. The court denied the motion for clarification, and later actions taken by the trial court reveal that Mycon's representation was correct regarding the court's intent in ruling on the motion for partial summary judgment.
At trial, the jury found that Mycon failed to perform its obligations under the contract, and therefore it did not award Mycon any of the monies retained by the Board for substandard concrete work and liquidated damages. It also found, however, that Mycon had sustained damages in the amount of $387,802 by attempting to use the Symons forming system, and final judgment was entered therefor, together with prejudgment interest.
Turning to the Board's first issue, we agree that the trial court, in limiting the facts and issues to be tried, incorrectly interpreted material specifications of the contract and, in so doing, misapplied Florida Rule of Civil Procedure 1.510(d). That provision authorizes the trial court, if the case is not fully adjudicated on the motion for summary judgment, to "ascertain, if practicable, what material facts exist without substantial controversy and what material facts are actually in good faith controverted." The court is thereafter authorized to "make an order specifying the facts that appear without substantial controversy." During trial, "the facts so specified shall be deemed established, and the trial ... shall be conducted accordingly."
Although the trial court denied Mycon's motion for summary judgment, we nonetheless are of the view that the court's order limiting the facts and issues, as well as its comments during the summary judgment hearing, had the effect of entering a ruling in Mycon's favor on two legal issues: whether the architect had an obligation under the contract to direct and pay for Mycon to use another system if the approved system did not work; and whether the architect warranted that the Symons forming system would enable Mycon to fulfill the contract tolerances. We conclude that this was error, as shown below.
We also agree that the trial court's erroneous instructions misled the jurors regarding the law to be applied in the case. Throughout the trial, the court gave the jury a number of curative instructions, essentially stating that while Mycon was not required to use the Symons forming system, the system was nevertheless an approved product which could be used, and that the Board impliedly warranted that the system would work; therefore, if in fact it did not work, the Board could be considered to have breached the contract. The error the court committed in its curative instructions was repeated during its concluding instructions, when it advised that the Board had made implied representations in the contract that the system could achieve the tolerances set forth therein, and that the Board had impliedly warranted the sufficiency of the specifications and drawings; therefore, if the jury found from the greater weight of the evidence that such conditions and warranties had not been fulfilled, the Board must be found to have breached the contract. The court also informed the jury that, as a matter of law, under the terms of the contract, Mycon complied with the contract in selecting the Symons forming system, or one equal to it, and, although Mycon was permitted to use another system equal to the Symons system with approval of the Board's architect, it was required to do so only if so directed by him, in which event the Board would be obligated to pay all of Mycon's costs and expenses associated with such use if the system failed to comply with its intended use. Finally, the jury was instructed that if it found that Mycon had properly assembled the Symons forming system and substantially performed its obligations, but was unable to achieve the results the architect contemplated, the jury was required to find that the Board had breached the contract, because its drawings and specifications were insufficient, and because the Board, as owner of the project, had impliedly warranted the sufficiency of its plans.
It appears from the above instructions and the comments made that the court *153 interpreted the language in the contract and in the shop drawings to mean that the Board had approved the Symons forming system, making the system an approved product, thereby requiring the Board to be held liable if the approved product did not fulfill all of the tolerances specified in the contract. From our examination of the pertinent contractual provisions, we cannot reach the same conclusion. In so saying, we note that because the interpretation of a written contract is a matter of law, an appellate court is not restricted in its review powers from reassessing the meaning and effect of the document and, if appropriate, from reaching a construction contrary to that of the trial court. Lee v. Montgomery, 624 So.2d 850 (Fla. 1st DCA 1993); Hartford Ins. Co. of the Midwest v. Atkinson, 623 So.2d 549 (Fla. 2d DCA 1993); Leseke v. Nutaro, 567 So.2d 949 (Fla. 4th DCA 1990).
Turning to the lower court's use of the term "approved product," we are unable to find any special legal meaning attached to it. Moreover, it appears that although the court correctly instructed the jury that the reference made in the contract to a Symons skin plate did not constitute a proprietary specification, the court apparently considered an approved product to have the same legal effect as a proprietary specification. In this regard, the court erred. Under circumstances in which a product is specified in the contract, the contractor has no discretion but is bound to use it, and, therefore, has the benefit of the owner's implied warranty that a satisfactory performance will result. WRB Corp. v. United States, 183 Ct.Cl. 409, 1968 WL 9146 (1968). Consequently, if a contractor is directed to use a particular brandname product which cannot perform as specified, the contractor should not be held liable if the product fails to perform or is defective. See Wood-Hopkins Contracting Co. v. Masonry Contractors, Inc., 235 So.2d 548 (Fla. 1st DCA 1970).
In contrast, however, a contract provision calling for the quality of the product to be the equivalent of a specific manufactured product is a performance specification involving no implied warranty, unlike a design specification, which "set[s] forth in precise detail the materials to be employed and the manner in which the work [is] to be performed." J.L. Simmons Co. v. United States, 188 Ct.Cl. 684, 412 F.2d 1360, 1362 (1969). The specification at issue here is a performance specification which "set[s] forth an objective or standard to be achieved, and the successful bidder is expected to exercise his ingenuity in achieving that objective or standard of performance, selecting the means and assuming a corresponding responsibility for that selection." Id.
In its brief, Mycon accepts the Board's argument that the warranty of constructability applies only to design specifications and does not extend to performance specifications. Mycon answers, however, that an examination of Haehn Management Co. v. United States, 15 Cl. Ct. 50 (1988), aff'd, 878 F.2d 1445 (Fed. Cir.1989), supports its contention that the references in the specifications to Symons forms were design specifications. Haehn, however, is not supportive of Mycon's position. It defines design specifications as "detailed measurements, tolerances, and materials, i.e., elaborate instructions as how to perform the contract ... in contrast to operational characteristics and specifications that leave the details of how to comply with the contract up to the contractor." Id. at 56-57. We find nothing in the contract which contains elaborate, detailed instructions to the contractor on how to perform the contract, therefore displacing the general provision in specification number 3.3.1, giving the contractor sole control "over construction means," etc.
Mycon further argues that the use of "or equal" language to another specified product in the contract necessarily makes the Symons designation a design specification, and that regardless of whether Mycon had chosen the Symons product or another product which was a truly equal substitute to one of Symons, the legal effect of such language gave rise to an implied warranty by the Board representing that the use of the Symons forming systems or their equal would allow Mycon to construct the building in accordance with the contract's requirements. We are also unable to agree with this argument. On the contrary, the placement of "or *154 equal" or "equal to" language in a construction contract has been generally interpreted as granting the contractor the right to propose for approval other materials and equipment which it considers equal to the brand specified. Urban Plumbing & Heating Co. v. United States, 187 Ct.Cl. 15, 408 F.2d 382 (1969), cert. denied, 398 U.S. 958, 90 S.Ct. 2164, 26 L.Ed.2d 542 (U.S.Ct.Cl. 1970); Jack Stone Co. v. United States, 170 Ct.Cl. 281, 344 F.2d 370 (1965). The only provision in the contract itself using the term "equal to" a product manufactured by Symons Corporation is contained in specifications 03100.03 and 03330.05(c), stating that the steel forms and forming systems chosen by the contractor were required to utilize "a skin plate with a ... surface, equal to that manufactured by Symons." There is, however, no language therein which dictates that the entire steel forming system be equivalent to the Symons forming system. The court's instructions, however, referred to the Symons forming system and not simply to the skin plate (a component of the system) and failed to recognize the distinction between the complete Symons forming system and the skin plate, which was the only product required by the contract to be equal to that manufactured by Symons.
It is true, as Mycon points out in its brief, that references are made to the Symons flex form system at several places in the architect's drawings. We recognize also that specification 3.3.1, after stating that the contractor shall have sole "control over construction means, methods, techniques," etc., provides an exception thereto if the "Contract Documents give other specific instructions regarding these matters." Nevertheless, we cannot accept Mycon's argument that the oblique references contained in the contract and the drawings to Symons products, without more detail, somehow transformed the specification into a proprietary or design specification which gave rise to an implied warranty by the Board that the product would work.
As a result, the court's repeated instructions to the jury throughout the trial regarding an approved product and the effect thereof were erroneous, because there is no legal meaning attributed to the term "approved product" as is given a proprietary or design specification. Notwithstanding language in the contract indicating the contrary, the instructions clearly suggested to the jury that the Board had a duty to control the means and methods of construction due to the contract's use of "equal-to" language. The import of the court's instructions was that if the jury determined that the Symons forming system did not work, it was required to hold the Board liable for costs and overruns and delays experienced by Mycon, regardless of the reason for the system's failure and notwithstanding that Mycon was not required under the terms of the contract to use the Symons system, but could have requested approval for the use of a different system, if it so desired.
We agree with the Board as to its arguments raised under Issues I and II. Based upon the cumulative harmful effect of the court's errors, the judgment must be reversed and the case remanded for new trial.
REVERSED and REMANDED.
BARFIELD and WOLF, JJ., concur.
NOTES
[1] The piece of metal placed directly against the concrete.
[2] Composed of numerous stiffeners, bolts, skin plates and supporting devices.