349 Mass. 489             489

Fred C. McClean Heating Supplies, Inc. *v.* M. J. Walsh & Sons, Inc.

Fred C. McClean Heating Supplies, Inc. *vs.*
M. J. Walsh & Sons, Inc.

Hampden. April 6, 1965. — July 2, 1965.

Present: Wilkins, C.J., Whittemore, Kirk, Spiegel, & Reardon, JJ.

*Contract,* Building contract.

Under a Federal contract for construction of an addition to a building specifying for the heating system a named make of unit ventilators, but providing in effect that other unit ventilators which "in the judgment of" the Federal contracting officer were "equal to" those specified might be used and that the contracting officer should be the "sole judge" of equality and his decision should be "final," the heating and ventilating subcontractor, upon complying with a decision of the contracting officer, affirmed by the deputy commissioner of the Federal agency on appeal, rejecting another make of unit ventilators proposed by the subcontractor to be substituted for those specified and requiring the use of those specified, was not entitled to recover from the general contractor on a claim based on greater expense of furnishing the specified unit ventilators where, even if the contracting officer was in error in insisting on the specified unit ventilators for the purpose of "standardization" of equipment in the addition and in the existing building, his decision included an express determination, not shown to be arbitrary or capricious, that the substitute unit ventilators proposed by the subcontractor were not equal to those specified.

Contract. Writ in the Superior Court dated July 23, 1960.

At the trial before *DeSaulnier, J.,* the judge ordered a verdict for the defendant. The plaintiff alleged an exception.

*Joseph M. Corwin* for the plaintiff.

*Dudley B. Wallace,* for the defendant, submitted a brief.

Reardon, J. On April 8, 1959, the defendant was awarded a prime contract from the United States through the Housing and Home Finance Agency for the construction of an elementary school addition at Westover Air Force Base in Chicopee. The plaintiff entered into a subcontract with the defendant to perform the heating and ventilating work

for the sum of $56,000. This work was to be in accordance with the architect's plans and specifications.

Section Y-1 incorporates into § Y of the prime contract, which governs the work subcontracted to the plaintiff, certain provisions referred to at p. SG-1 of the prime contract. These include §§ 5 (f) and 15 (a) of the "General Conditions" and § SG-11 (c). Section 5 (f) provides that "[n]othing contained in the [c]ontract [d]ocuments shall create any contractual relation between any subcontractor and the [g]overnment." Section 15 (a) provides, "Specific reference in the [s]pecifications to any article, device, product, material . . . or type of construction, etc., by name . . . shall be interpreted as establishing a standard of quality and shall not be construed as limiting competition, and the [c]ontractor, in such cases, may at his option use any article . . . product, or material . . . which in the judgment of the [c]ontracting [o]fficer expressed in writing is equal to that named." Section SG-11 (c) is similar to § 15 (a), adding that the contracting officer "shall be the sole judge as to the 'recognized equal' and his decision shall be final."

Section Y provides for furnishing and installing, in classrooms and elsewhere, "unit ventilators for series hot water heating." Section Y-17.05 (a) states that "[t]he heating system as shown [by the drawings] is based upon unit ventilators as manufactured by J. J. Nesbitt Inc., and all ratings and performances required are based upon such units." Finally, § Y-17.05 (e) 1 states: "Unit ventilator equipment as manufactured by Trane, Herman Nelson, or equal, may be used, provided however that approved auxiliary radiation as required herein . . . shall be arranged to meet the performance and operation specified."[1]

The plaintiff requested approval of unit ventilators manufactured by the Schemenauer Company as the equal of the

---

[1] Section Y-17.05 (e) 2 provides: "Unit ventilators shall match storage cabinets provided by others, and all piping enclosures shall be as manufactured by the unit ventilator manufacturer." We note an apparent inconsistency in that § X-9 (c) provides that "[m]etal storage cabinets shall be . . . made by the same manufacturer that makes the classroom ventilating units that will be furnished by the heating subcontractor under Section Y."

349 Mass. 489                                                   491

Fred C. McClean Heating Supplies, Inc. v. M. J. Walsh & Sons, Inc.

equipment designated in the specifications. The architect rejected the proposed substitute, whereupon the plaintiff, through the defendant, sought a hearing before the contracting officer.[2] The plaintiff, at the defendant's request, submitted its position to the contracting officer in writing. Prior to the hearing the plaintiff received a copy of a letter from the contracting officer. Equipment manufactured by Schemenauer was determined by him not to be the equal to that of Nesbitt. The plaintiff, both in this letter and at the hearing which was held later, was told that only Nesbitt equipment would be satisfactory, as the government insisted on standardization of equipment and Nesbitt equipment was used in the existing school.

The decision of the contracting officer was appealed by the plaintiff and the defendant. Before a hearing was held before the deputy commissioner of the government agency, the plaintiff and the defendant orally requested the architect to allow the use of Trane equipment. This request was denied. A hearing then took place, subsequent to which, on November 20, 1959, the deputy commissioner informed the defendant by letter that the decision of the contracting officer relative to Schemenauer equipment was affirmed, concluding that "the substitute unit ventilators you proposed to furnish are not the equal of the specified unit ventilators." Referring to the Trane equipment, the deputy commissioner wrote, "[I]nasmuch as the [c]ontracting [o]fficer as far back as August 10 last instructed you that the Nesbitt unit ventilators should be installed on the project, your request dated November 6, 1959, for approval of the Trane unit ventilators is rejected. Consequently, you will be expected to comply with the instruction, namely the installation of the Nesbitt unit ventilators without further delay." Copies of this letter were forwarded by the defendant to the plaintiff, and on November 27, 1959, the plaintiff informed the defendant that it was proceeding to complete the subcontract under protest.

In this action of contract the plaintiff seeks to recover

[2] For a discussion of the relationship between the contracting officer and the subcontractor, see Paul, United States Government Contracts & Subcontracts, 229–231 (1964).

492                                            349 Mass. 489

Fred C. McClean Heating Supplies, Inc. v. M. J. Walsh & Sons, Inc.

the extra cost of furnishing the Nesbitt equipment. The court directed a verdict for the defendant to which the plaintiff excepted.

The plaintiff contends that the insistence of the contracting officer that the defendant — and through it the plaintiff — furnish Nesbitt unit ventilators involved a change in the contract entitling the plaintiff to an equitable adjustment in price. There is a close similarity between this case and *Jack Stone Co. Inc.* v. *United States,* 344 F. 2d 370 (Ct. Cl.), which held that a contracting officer misinterpreted a government contract containing an "or equal" clause (see §§ 15 (a) and SG–11 (c) referred to above) by ruling that only the specified "standard of quality" materials could be used.[3]

Viewing the evidence most favorable to the plaintiff (*Howes* v. *Kelman,* 326 Mass. 696, 697; *DeLeo* v. *Jefferson,* 331 Mass. 317, 318), we conclude that the judge properly directed a verdict for the defendant. Three individuals — the architect, contracting officer, and deputy commissioner — concluded that Schemenauer equipment would not be satisfactory. The record indicates that the latter two authorities insisted on Nesbitt unit ventilators. But this, even if improper, does not establish that Schemenauer equipment is "equal" to that of Nesbitt. Indeed there is no evidence that Schemenauer does meet the specified standard of quality. This is a vital distinction between this case and the *Jack Stone Co.* decision, where the administrative board made "the equivalent of a finding of equality and adequacy." 344 F. 2d at 376. Section SG–11 (c) lends finality to the decision of the contracting officer. We cannot say that his decision was capricious, arbitrary, or unsupported by the evidence before him.[4] As to the Trane equip-

---

[3] This ruling was apparently based on the contracting officer's belief that standardization of fire alarm systems was necessary. The court's opinion notes that if this were so, the appropriate course would have been to delete the "standard of quality" sections from the contract. 344 F. 2d at 374.

[4] At best the record is somewhat cloudy as to what evidence was before the administrative officials. The plaintiff did furnish "certain information on seventeen different items concerning the Schemenauer equipment." Presumably this information was the basis for the architect's decision and was considered by the contracting officer and the deputy commissioner.

ment, which the plaintiff belatedly attempted to substitute, § Y–17.05 (e) 1 permits it to be used "provided . . . that approved auxiliary radiation as required herein . . . shall be arranged . . . ." There is no evidence that the plaintiff complied with this proviso.

*Exceptions overruled.*