ARMED SERVICES BOARD OF CONTRACT APPEALS

Appeal of -- )
 )
Carothers Construction, Inc. ) ASBCA No. 62204
 )
Under Contract No. W91278-12-D-0037 )


APPEARANCE FOR THE APPELLANT: Ralph B. Germany, Jr., Esq.
 Bradley Arant Boult Cummings LLP
 Jackson, MS

APPEARANCES FOR THE GOVERNMENT: Michael P. Goodman, Esq.
 Engineer Chief Trial Attorney
 Kathleen P. Miller, Esq.
 David C. Brasfield, Jr., Esq.
 Engineer Trial Attorneys
 U.S. Army Engineer District, Mobile

OPINION BY ADMINISTRATIVE JUDGE CLARKE

This appeal is submitted pursuant to Board Rule 11. The dispute involves a disagreement over whether the Air Force (AF)[1] specified a proprietary 2 1/2″ thick roof deck product and, if so, was Carothers Construction, Inc. (Carothers) entitled to substitute a 2″ thick roof deck as an equal pursuant to Federal Acquisition Regulation (FAR) 52.236-5, MATERIAL AND WORKMANSHIP. We have jurisdiction pursuant to the Contract Disputes Act of 1978 (CDA) 41 U.S.C. §§ 7101-7109. We sustain the appeal.

FINDINGS OF FACT

1. On December 15, 2015, the Air Force (AF) solicited for the phased replacement of the Maxwell Elementary/Middle School at Maxwell Air Force Base, Alabama by Solicitation No. W91278-16-URGC-0001 (R4, tab 5 at 3).

2. The solicitation included several relevant clauses: FAR 52.243-4, CHANGES (JUN 2007)[2], FAR 52.236-21, SPECIFICATIONS AND DRAWINGS

---

[1] The Corps of Engineers was also involved, but we use Air Force (AF) to avoid
 confusion.
[2] We were unable to find FAR 52.243-4 Changes in the contract but, if it is missing, it
 is included by operation of law. *Tri-County Contractors, Inc.*, ASBCA
 No. 58167, 15-1 BCA ¶ 36,017 at 175,916 n 2 ("Despite the absence of the

OF CONSTRUCTION (FEB 1997), and FAR 52.236-5, MATERIAL AND WORKMANSHIP (APR 1984) (R4, tab 4 at 94-95). FAR 52.236-5, MATERIAL AND WORKMANSHIP, states in part:

> (a) All equipment, material, and articles incorporated into the work covered by this contract shall be new and of the most suitable grade for the purpose intended, unless otherwise specifically provided in this contract. References in the specifications to equipment, material, articles, or patented processes by trade name, make, or catalog number, shall be regarded as establishing a standard of quality and shall not be construed as limiting competition. The Contractor may, at its option, use any equipment, material, article, or process that, *in the judgment of the Contracting Officer*, is equal to that named in the specifications, unless otherwise specifically provided in this contract.

(Emphasis added)

3. Phase 2A of the Contract included construction of a new addition to the existing Maxwell Elementary School. This new addition included a performance area and ICC500 Storm Shelter that both feature the acoustical deck roof product. The solicitation, Sheet S-002[3], <u>STEEL DECK NOTES</u>, ¶ 2. MATERIALS, (WRA) 2-1/2″, 20 GA ACOUSTICAL DECK (SR-0.70), required providing a 2 1/2″ thick acoustical roof deck at various locations in Phase 2A. (R4, tab 8 at 1[4], tab 22 at 2 ¶ 5) There were no markings that would indicate the 2 1/2″ deck was proprietary.

4. In a February 12, 2016 email and letter to Zyscovich Architects,[5] Mr. Sean Smith, New Millennium Building Systems, submitted its request to substitute

---

required FAR 52.243-4, CHANGES (JUN 2007) clause from this construction contract (finding 7), such clause may be deemed included pursuant to *G.L. Christian & Associates* v. *United States*, 312 F.2d 418, 426 (Ct. C1.), *cert. denied*, 375 U.S. 954 (1963)").

[3] Drawing sheet S-002 General Notes was developed by "Transystems" but "ZYSCOVICH Architects" was printed on the right side of S-002 (R4, tab 8 at 1). We do not know the relationship between Transystems and Zyscovich.

[4] Drawing S-002 was "issued" on October 2015 pursuant to Solicitation No. W91278-16-URGC-0001 (R4, tab 8 at 1).

[5] Zyscovich Architects name appears on the solicitation drawings (R4, tab 8 at 1) and we infer that Zyscovich is the original architect of record.

its deck product Versa-Dek[6] "as a suitable alternate to the specified Toris A (Epic Metals Corporation)" called out in the solicitation structural drawings.[7] Attached to the letter was "side-by-side metal deck product comparisons." (R4, tab 1 at 10-13) In a January 11, 2019 email from Mr. Smith to Mr. Boggs, Carothers' Senior Project Manager, Mr. Smith stated that he had submitted the data to Zyscovich almost three years ago (*id.* at 10). There is no indication in the record that Zyscovich responded to the February 12, 2016 email.

5. The declaration of Mr. Walter Boggs is in the record (app. supp. R4, tab 3). Mr. Boggs was Senior Project Manager for Carothers from the time of bid through February 2020 (*id.* at 1 ¶ 4). He testified that he investigated and found that only one manufacturer (Epic Metals) made such a roof deck (the Toris A roof deck product) that was 2 1/2″ thick (*id.* at 3 ¶ 10).

6. Mr. Boggs also testified:

> On behalf of Carothers, I also investigated whether the Versa-Deck product was an equal to the Toris/Epic Metals product. In that investigation I obtained the emails and letter from Sean Smith with New Millennium Building Systems included in Tab 1 of the Rule 4 file at the pages bates-labeled 1000010-16. As shown by that documentation, Mr. Smith/New Millennium documented how the Versa-Deck product was an equal to the Toris/Epic Metals product. Note this documentation shows it was submitted to the United States Army Corps of Engineers's ("USACE") designer of record (Zyscovich Architects) (the "DOR") prior to bids for the Project, with the expectation that it would be used for bidding on this Project. Carothers provided this information to the USACE as part of Carothers's effort to get approval to use the Versa-Deck product and to recover for not being allowed to use the Versa-Deck product.

(App. supp. R4, tab 3 at 3 ¶ 11)

7. Carothers bid the Contract expecting to use Harrell's Metal Works, Inc. ("Harrell") to supply the roof deck system. Harrell's quote and Carothers' bid for the

---

[6] The product was called both "Versa-Dek" and "Versa-Deck" in different correspondence. We do not perceive a difference.

[7] Structural drawings are identified by an "S" such as S-002 relevant in this appeal.

Contract were based on using the New Millennium 2″ Versa-Deck LS ES Acoustical roof system.  (App. supp. R4, tab 3 at 2 ¶ 7)

8.  The Corps of Engineers (COE) Mobile (Alabama) District awarded Task Order No. W91278-12-D-0037-0003 to Carothers on March 28, 2017, in the amount of $39,010,686 (R4, tab 9 at 1).

9.  The record includes the Declaration of Mr. Timothy R. Posey, Administrative Contracting Officer (ACO), for this contract (R4, tab 22 at 1). ACO Posey states:

> The U.S. Army Corps of Engineers, Norfolk District entered contract W91236-14-D-0046-0007 with Zyscovich, Inc. ("Zyscovich") on April 27, 2017, to obtain Engineering During Construction Design Services (the "EDC Contract") for the Maxwell Elementary/Middle School Project.  The EDC Contract required Zyscovich to provide limited reviews of Carothers' submittal packages and Requests for Information ("RFI's").  The quantity of submittal and RFI reviews was detailed in the negotiated EDC Contract.  Any variation in that quantity exclusive of design errors, omissions, or clarifications, would require modification to the EDC Contract by the Norfolk District Contracting Officer.  The U.S. Army Corps of Engineers, Mobile District held no contractual authority on the EDC Contract.  However, the Mobile District Field Office was responsible to determine which Contract submittals and RFI's would be reviewed by the EDC Contract.  The Mobile District Field Office also provided input and analysis for the EDC Contract regarding errors, omissions, and clarifications.

(R4, tab 22 at 2 ¶ 6)

10.  Following the award of Task Order No. W91278-12-D-0037-0003, the initial acoustical deck submittal was received by the government on November 7, 2017, under transmittal number 05 30 00-1 (R4, tab 19 at 1, tab 22 at 3 ¶ 8).  The submittal contained technical and test information that was not discussed in the record. However, it included the following:

- New Millennium Building Systems drawing D3.1 showing a section of VERSA-DEK®LS ES ACOUSTICAL roof deck having an overall height of 2″.

There is a note in red ink stating, "Note: Refer to sheet S-002 'Steel Deck Notes' for deck height = 2 1/2″." (R4, tab 19 at 25)

- New Millennium New Millennium Building Systems data sheet <u>SECTION PROPERTIES CALCULATIONS</u> listing a 2″ deck height with a red ink annotation 2 1/2″ (*id*. at 30, 32).

- Sound Absorption Test Report for "20 Ga. Versa-Dek® 2.0 with 2″, 3# Insulation and mesh spacers" (*id.* at 34).

11.  ACO Posey testified in his Declaration that the submittal was forwarded to the EDC Contractor, Zyscovich, Inc., for review.  ACO Posey testified:

> The Contracting Officer's Representative and I reviewed the plans and acknowledged the notes regarding acoustical deck height, made by the EDC Contractor on the Shop Drawings.  Contract Drawing S-0002 specifically requires that the acoustical roof deck be 2.5″ in height, while the Shop Drawings specifically call for the height to be 2″.

(R4, tab 22 at 3 ¶ 8)

12.  On or about January 3, 2018, Carothers submitted Request for Information (RFI) 0113 asking for approval of 2″ Versa-Dek® LS ES Acoustical deck as a suitable alternative to the specified 2 1/2″ Toris A (Epic Metals Corporation) called out on the structural drawings (app. supp. R4, tab 3 at 31).

13.  RFI 0113 was reviewed by Zyscovich Architects that responded on January 19, 2018, as follows:

> Question [RFI-0113]:  We are seeking approval of our Versa-Dek® LS ES Acoustical as a suitable alternate to the specified Toris A (Epic Metals Corporation) called out in the Maxwell Elementary and Middle School project's structural drawings.  Please find attached side by side metal deck product comparisons, product submittal information and a formal letter outlining what metal deck product we are seeking approval on.  Versa-Dek® LS ES Acoustical meets and/or exceeds all load and acoustical value requirements.

The drawings came back from approval with a stamp saying to re-submit for the Versa Dek. The drawings called for 2-1/2″ Epic deck.

We need to get 2″ Versa Dek approved to move forward on the project without delays. New Millennium Building Systems does not make a 2-1/2″ deck. In fact, the only manufacture we can find that make 2-1/2″ deck is Epic Metals Corporation.

Answer: Based on the loads and spans, a 2″ acoustical deck will not comply. Contractor may submit alternate decking structural and acoustical properties for a 2 1/2″ or possibly a 3″ acoustical deck for review and acceptance.

(App. supp. R4, tab 3 at 31)

14. ACO Posey testified in his Declaration as follows:

The Contracting Officer's Representative forwarded RFI- 0113 to the EDC Contract for review, noting that the RFI was not associated with a design error, omission, or clarification. A response was returned to the Contracting Officer's Representative by the EDC Contractor disapproving use of the 2″ acoustical deck. No structural analysis was provided by the EDC Contractor, and it is unclear if the RFI was reviewed by their Structural Engineer Subcontractor.

(R4, tab 22 at 5 ¶ 11)

15. By email dated January 22, 2018, Mr. Arlyn Marheine, P.E. COE, sent Mr. Hunter Boggs the following:

Hunter,

The designer said that the 2″ does not meet the design criteria but that the 3″ might. If you wanted to submit that, then they could review it. Based on the side by side comparison that you provided though, it clearly shows that the Allowable Load on the 2″ decking is less than on the 2 1/2″ decking as well as having a lower acoustical rating on the un-shored spans. I have asked for additional

6

clarification on why the 2″ deck doesn't meet the
requirement, but as a variation request, it is really on
Carothers to demonstrate that the alternate meets the
requirements not the DOR to demonstrate that the alternate
doesn't. Let me know if you have any questions. Thanks

(App. supp. R4, tab 3 at 50) By email dated January 23, 2018, Mr. Hunter Boggs sent
Mr. Arlyn Marheine, P.E. COE, and ACO Posey the following:

> Arlyn,
>
> Please find the attached calculations for the 2″ versa deck.
> We just got off of the phone with New Millennium's
> engineer and he stated that the 2″ decking is more than
> capable of handling the specified loads on this project.
> Please have the DOR review and let's have a conference
> call with everyone to discuss after their review.

(App supp. R4, tab 3 at 49)

16. ACO Posey "urged" Carothers to submit the 2″ acoustical roof deck Shop
Drawings as a variation to the contract (R4, tab 22 at 5 ¶ 12). Carothers disagreed and
in a February 28, 2018, email wrote, "This is not a variation. The deck we proposed
meets the spec. This is a huge cost issue, and we are being forced into something that
we do not have in the contract. I do not understand why you will not allow the
professionals to talk." (R4, tab 13 at 2) ACO Posey responded, "If the deck you are
proposing is not 2.5″, then it is a variation. The plans are very clear." (R4, tab 13 at 1)
On February 28, 2018, the COE Area Engineer, Mr. McLeod, got involved in this
email exchange writing, "Our position is that we identified salient characteristics in the
contract including deck thickness and expect them to meet all those requirements, and
the only way we could except [sic] a change would be through a variation with a credit
mod." (*Id*.)

17. During an owner's meeting on February 2, 2018, Carothers and the
government discussed this roof deck issue. At that meeting it was agreed that Carothers
would get a third-party structural engineer to review the issue of whether the
Versa-Deck product should be accepted. (R4, tab 1 at 21-22; app. supp. R4, tab 3 at 5
¶ 20).[8] Carothers then engaged LBYD Engineers, and in particular, Mr. Brad Harrison,

---

[8] The COE does not dispute the fact that the parties agreed that Carothers would hire a
third-party structural engineer to evaluate Versa-Deck as an appropriate substitute
for the required 2 1/2″ deck specified in the contract, but the COE insisted that
the information be submitted as a variation. (COE reply br. at 12-13)

7

to conduct the structural engineering review (app. supp. R4, tab 3, at 5 ¶ 20, tab 2, at 2 ¶ 11). Mr. Harrison stated in his declaration, he has over 20 years structural design experience, including projects like this one and including roof systems like the one at issue here (app. supp. R4, tab 2 at 2 ¶ 10). Mr. Harrison was provided the same New Millennium Versa-Deck product data identified in the January 19, 2018, submission of RFI-0113 and the January 23, 2018 email with the manufacturer's calculations (app. supp. R4, tab 3 at 05 ¶ 20, tab 2 at 2 ¶ 12).

18. By letter dated February 15, 2018, LBYD, Inc. (Mr. Harrison) reported that based on its review, the 2″ Versa-Deck manufactured by New Millennium "meets or exceeds all of the span/load, and noise reduction requirements specified in the construction documents" and is an "acceptable substation [sic] for the specified deck in the design documents" (R4, tab 1 at 23). The record includes a declaration from Mr. Brad Harrison a licensed professional engineer who conducted the review for LBYD (app. supp. R4, tab 2 at 2). Mr. Harrison verified his calculations and confirmed that "the 2″ Versa-Deck LS ES Acoustical roof system as manufactured by New Millennium should have been considered an equal to the roof system product identified in the Contract documents for the Project"[9] (*id*. at 3-4 ¶¶ 13-15). On February 15, 2018, Carothers delivered that letter to the government (app. supp. R4, tab 2 at 3, 35, tab 2 at 3 ¶ 13, tab 3 at 5 ¶ 20; R4, tab 1 at 23). There is no evidence in the record that the government responded.

19. Carothers submitted a 2.5″ deck for approval in combined transmittal 053000-1.2/1.3 on March 12, 2018. The government returned the submittal to Carothers on March 29, 2018, with the remark "Approved as Noted" and Carothers then provided the 2 1/2″ deck, as specified in the drawings. (R4, tab 22 at 7)

20. On May 16, 2018, Mr. Chad McLeod, US Army CESAM, emailed Mr. Kyle Rogers, US Army CESAM, with copy furnished to ACO Posey, the following:

> Kyle,
>
> FYI, this will be coming your way. This is the situation where we unknowingly specified a material that apparently only one manufacturer could provide. See the e-mail below and the attached.

(R4, tab 17 at 1)

---

[9] The COE agrees with Mr. Harrison's credentials and does not dispute that this is Mr. Harrison's "opinion" (COE reply br. at 14-17).

21.  On April 12, 2019, Carothers filed a certified claim for $319,699.21 via email with the contracting officer.  Carothers stated that this $319,699.21 amount constitutes the direct and indirect costs incurred as a result of the disagreement regarding the thickness of the deck.  This figure includes the field office overhead and a total of 46 days of alleged compensable time to be added to the contract.  (R4, tab 1 at 1)

22.  On June 6, 2019, Carothers and the government agreed to Modification No. 2W to the Contract (R4, tab 10 at 2).  Modification No. 2W settles any issues or disputes related to time associated with any modifications issued prior to May 1, 2019.

23.  On June 28, 2019, the Contracting Officer denied Carothers' claim of $319,699.21 and stated the following:

> The contract drawings plainly specified that a 2 1/2″ deck was required.  In your claim you argued that the proposed Millennium 2″ deck met all of the specifications of the contract and was a suitable alternative for the contract indicated 2 1/2″ deck.  However, this was not the case.  The 2″ deck did not meet the specifications and contract requirements because it is a settled principle of contract law that the specifications and drawings are to be read together in concert.  In this case, Section 05 30 00 "Steel Decks", Paragraph 2.3.4 "Composite Deck" states "Fabricate deck used as the tension reinforcing in composite deck of the steel design thickness required by the design drawings."  (Tab H)  The design drawings clearly indicate and state that the deck is to be 2 1/2″.  As a result, Carothers' proposed 2″ New Millennium deck did not meet the drawing and specification requirement.  The Government was entitled to the benefit of the deck that it had specified in the contract and should not have to pay Carothers additional compensation for an item which was clearly outlined and required by the contract**.**

(R4, tab 2 at 3-4)

24.  On September 18, 2019, in light of Modification No. 2W resolving a large portion of the original claim amount, Carothers submitted a Request for Equitable Adjustment (REA) containing the same facts as its April 12, 2019, claim but in the amount of $69,580.11.  The Contracting Officer, citing his original denial letter of June 28, 2019, denied this REA via email on September 19, 2019.  (R4, tab 3)

9

25. Carothers filed this appeal (app. supp. R4, tab 3 at 6 ¶ 26). The Board docketed the appeal as ASBCA No. 62204

DECISION

*Position of the Parties*

Carothers contends that the AF's specification requiring 2 1/2″ thick roof deck was proprietary and that FAR 52.236-5, Material and Workmanship, entitled it to submit a 2″ thick "Versa-Dek" roof deck product that was equal in all important performance requirements. The AF would not allow substitution and Carothers provided the 2 1/2″ deck at additional cost which Carothers asks to be repaid.

The AF contends that it is entitled to strict compliance with its specifications and that it advised Carothers to submit the 2″ deck as a variation. Carothers refused to submit the variation. The AF maintains that it would only consider the 2″ deck as a variation. It argues Carothers is not entitled to compensation for providing the 2 1/2″ thick deck because it was specified in the solicitation.

*The 2 1/2″ Deck Specification Was Not "Brand Name or Equal"*

An argument not asserted in the briefs that we feel, for the sake of completeness, we should deal with. Late in the game, February 2018, the COE Area Engineer, Mr. McLeod, took the position, for the first time in the record, that the 2 1/2″ deck thickness was a "salient characteristic." (Finding 16) "Salient characteristic" is a "term of art" in the government contracting world that is associated with brand name or equal specifications:

> When the Government uses a brand name or equal specification, it must identify the salient characteristics of the brand name product and use those characteristics in evaluating the equivalency of proposed substitutes. *See KEMRON Environmental Services Corp.*, ASBCA No. 51536, 00-1 BCA ¶ 30,664, 18 November 1999, slip op. at 7. "While the Government may reject a substitute if the salient characteristics are not met, . . . bidders should not have to guess at the essential qualities and the Government cannot reject an item that is functionally equivalent to the brand name product." *Id*.

*Southern Systems, Inc.*, ASBCA Nos. 43797, 43798, 00-1 BCA ¶ 30,762 at 151,924. Mr. McLeod's 2018 characterization of the 2 1/2″ deck thickness as a "salient characteristic" to justify denying equivalency and demanding that Carothers submit the

10

2″ deck as a "variation with a credit mod" raises the issue of brand or equal (finding 16). It's too late to rely on Brand Name or Equal and "salient characteristic" to deny Carothers' claim because the brand name or equal specification and listing of salient characteristics was not included in the solicitation. There was no notice to bidders and no evidence of AF intent before award to identify the 2 1/2″ as a brand name or equal product.

*Carothers' Burden of Proof*

We discussed the elements of proof facing Carothers in *Classic Site Solutions, Inc.*, ASBCA Nos. 58376, 58573, 14-1 BCA ¶ 35,647:

> (1) the specifications are proprietary, (2) appellant submitted a substitute product along with sufficient information for the contracting officer to make an evaluation of the substitute, and (3) the proposed substitute meets the standard of quality represented by the specifications. *North American*, 96-2 BCA ¶ 28,496 at 142,299; *Blount Brothers Corp.*, ASBCA No. 31202, 88-3 BCA ¶ 20,878 at 105,575.

*Classic Site Solutions*, 14-1 BCA ¶ 35,647 at 174,553.

*The 2 1/2″ Deck Specification was Proprietary*

Mr. Boggs, Carothers Senior Project Manager, testified that after investigation he found that only one vendor, Epic Metals, manufactured a 2 1/2″ roof deck system (finding 5). When an item has only one source, it is the very definition of proprietary:

> A specification is proprietary when it describes an item that can only be obtained from one source, even when a brand name is not expressly designated.[10] *See C&D Construction, Inc.*, 97-2 BCA ¶ 29,283 at 145,697; *North American Construction Corp.*, 96-2 BCA at 142,298; *W.M. Schlosser Company, Inc.*, ASBCA No. 44778, 96-2 BCA

---

[10] We are aware that in *C Construction Co., Inc.*, ASBCA No. 41706, 94-1 BCA ¶ 26,263 we held that "The right of such substitution is limited by the [Material and Workmanship] clause to cases where a product is specified by trade name, make or catalog number" but we also held that a product could be "otherwise restricted to a single manufacturer's product." *Id*. at 130,616. In view of *Southern Systems*, we distinguish *C Construction* interpreting "otherwise restricted" to allow sole source determinations absent markings.

> ¶ 28,297 at 141,289; *Central Mechanical, Inc.*, ASBCA
> Nos. 29360, 29514, 84-3 BCA ¶ 17,674 at 88,157. "When
> the evidence is that other manufacturers can meet the
> specification it, by definition, could not be proprietary or
> sole source." *J.R. Youngdale Construction Co., Inc.*,
> ASBCA No. 27793, 88-3 BCA ¶ 21,009 at 106,118.

*Southern Systems*, 00-1 BCA ¶ 30,762 at 151,923.

When an appellant makes its case that a specification is proprietary, the burden shifts to the government to prove otherwise:

> We conclude that appellant made a prima facie showing
> that the tilt control requirement was proprietary. It was
> then incumbent on the Government to come forward with
> evidence showing that there was another source
> manufacturing tilt control mechanisms meeting the
> performance requirements of the contract. The
> Government has not met this burden. Accordingly, we
> find that the tilt control mechanism was proprietary and
> that appellant had a right to submit a substitute control
> system for evaluation.

*North American Construction Corp.*, ASBCA No. 47941, 96-2 BCA ¶ 28,496
at 142,298-99.

Carothers has made a prima facie case that the 2 1/2″ deck is proprietary. It is now incumbent on the AF to prove there is another source for the 2 1/2″ deck. The AF provided no evidence to rebut Mr. Boggs' conclusion and there is nothing in the record indicating that the AF even tried to locate a second source for the 2 1/2″ roof deck or that challenged the quality of the 2″ deck. Indeed, the evidence before us is that the COE, through Mr. McLeod, recognized that the roofing material was, in fact, proprietary (finding 20). The AF failed to meet its burden in this regard. We hold that the AF's 2 1/2″ specification was proprietary even though it was not marked as such.

*Carothers Has a Right to Submit an Equal Substitute*

Having found that the 2 1/2″ deck product was proprietary, FAR 52.236-5, Material and Workmanship, allows Carothers to submit an equal substitute. The general rule of strict compliance with the contract specifications does not apply simultaneously with the Material and Workmanship clause – it is one or the other. We

discussed FAR 52.236-5, Material and Workmanship in *Classic Site Solutions*,
14-1 BCA ¶ 35,647:

> Inclusion of the Material and Workmanship clause
> qualifies the general rule that, after award, the Government
> is entitled to strict compliance with every technical
> requirement of the contract's specifications.  The clause
> provides a contractor the right to submit a substitute
> product for a proprietary item called for in the contract's
> specification absent a warning that only the proprietary
> item will be accepted.  *North American Construction
> Corp.*, ASBCA No. 47941, 96-2 BCA ¶ 28,496 at 142,298.
> Use of the word "shall" is not a sufficient warning.
> *Minority Enterprises, Inc.*, ASBCA No. 45549 *et al.*,
> 95-1 BCA ¶ 27,461 at 136,827.  Language such as,
> "*NOTWITHSTANDING* any other provision of the
> contract, no other product will be acceptable" is sufficient
> warning to preclude substitution.  *Maron Construction Co.*,
> ASBCA No. 53933, 05-1 BCA ¶ 32,904 at 163,026.  The
> Government did not include such a warning in paragraph
> 2.3 MIX DESIGN.

*Classic Site Solutions*, 14-1 BCA ¶ 35,647 at 174,552.  The solicitation did not provide
any warning to Carothers that the AF would not accept substitutions of equivalent
products for the 2 1/2″ deck.

As can be seen from the material and workmanship clause (finding 3) and
elements of proof quoted above, the determination of "equality" in performance and
quality is assigned to the Contracting Officer but it has limits:

> Since the determination of equality is expressly assigned
> by the Material and Workmanship clause to "the judgment
> of the contracting officer," Gibbs must show that the
> contracting officer's rejection of the proposed equal
> products was an unreasonable exercise of judgment.  *See
> Trataros Construction Co., Inc.*, ASBCA No. 42845, 94-1
> BCA ¶ 26,592 at 132,322; *Bruce-Andersen Company, Inc.*,
> ASBCA No. 29411, 88-3 BCA ¶ 21,135 at 106,714-715.

*Gibbs Construction Company*, ASBCA No. 44141, 95-1 BCA ¶ 27,368 at 136,370.
Carothers must now prove that the AF's refusal to consider the equivalency of the 2″
deck was "an unreasonable exercise of judgment."

*Carothers Made a Prima Facie Case for Equivalency*

Carothers bears the burden of proof of equivalency:

> The contractor bears the burden of proving that its
> substitute is equal in quality and performance to the item
> specified in the contract.

*North American*, 96-2 BCA ¶ 28,496 at 142,299 (citations omitted).

Evidence that the 2″ deck product was equivalent to the 2 1/2″ deck product was submitted five times to the AF to no avail. First, was on February 12, 2016, before the March 28, 2017, award of Task Order W91278-12-D-0037-0003, (finding 8) when New Millennium Building Systems, manufacturer of the 2″ deck, wrote to Zyscovich Architects, the AF's Designer of Record (DOR), requesting approval to submit the substitute 2″ deck. Attached to the letter was a side-by-side metal deck data comparisons. (Finding 4) Carothers' bid the Contract based on using the New Millennium 2″ Versa-Deck LS ES Acoustical roof system (finding 7). Mr. Boggs testified in his declaration that he reviewed documents submitted by Millennium demonstrating that the two decks were equivalent (finding 6). There is no evidence in the record of a response from Zyscovich Architects.[11] We are not aware of any evidence that Carothers or the AF knew that there was only one producer of the 2 1/2″ deck before award.[12]

The initial acoustical deck submittal was received by the AF on November 7, 2017. The submittal contained technical and test information. (Finding 10) The submittal was forwarded to the EDC Contractor, Zyscovich, Inc., for review (finding 11). Zyscovich noted the fact that the specification required a 2 1/2″ deck but that a 2″ deck was submitted (finding 11). There is nothing in the record indicating Zyscovich investigated equivalency in response to this submittal.

On or about January 3, 2018, Carothers submitted Request for Information (RFI) 0113 asking for approval of 2″ Versa-Dek® LS ES Acoustical deck as a suitable alternative to the specified 2 1/2″ Toris A (Epic Metals Corporation) called out on the structural drawings (finding 12). RFI 0113 included the side-by-side metal deck data

---

[11] One problem may be that Mobile District (AL) awarded Task Order W91278-12-D-0037-0003 (finding 8) but the Norfolk District (VA) awarded and funded the EDC contract and was responsible to determine which Contract submittals and RFI's would be reviewed by the EDC Contractor, Zyscovich (finding 9).

[12] We don't believe it would make any difference in the outcome if that issue had been raised before award.

product comparison for the 2 1/2″ and 2″ decks. Zyscovich responded to RFI 0113 stating "[b]ased on the loads and spans, a 2″ acoustical deck will not comply" (finding 13). ACO Posey testified in his Declaration about Zyscovich's response stating that "[n]o structural analysis was provided by the EDC Contractor, and it is unclear if the RFI was reviewed by their Structural Engineer Subcontractor" (finding 14). We will not fill in the blanks left by the AF and conclude that a structural engineer reviewed the technical data submitted in support of the 2″ deck.

On January 22, 2018, Mr. Arlyn Marheine AF PE sent Mr. Boggs the following, "the Allowable Load on the 2″ decking is less than on the 2 1/2″ decking as well as having a lower acoustical rating on the un-shored spans" (finding 15). This is the only place in the record where the AF made any technical comments but we have no idea what analysis went into these comments. On January 23, 2018, Mr. Boggs sent the AF calculations for the 2″ versa deck indicating that New Millennium's engineer stated that the 2″ deck was equivalent to the 2 1/2″ deck (*id.*).

In a February 2, 2018, meeting Carothers and the AF agreed that Carothers would hire an independent third-party structural engineer to evaluate the equivalency of the 2″ deck (finding 17). The engineer, Mr. Harrison, was provided the technical data and documentation submitted earlier by Millennium in RFI 0113 (finding 17). Mr. Harrison reported that his calculations confirmed that the 2″ Versa-Deck LS ES Acoustical roof system as manufactured by New Millennium "should have been considered an equal to the roof system product identified in the Contract documents for the Project" (finding 18). Mr. Harrison's findings were provided to the AF, but there is no indication in the record of a technical analysis or response by the AF (*id.*). The AF's position remained that the 2″ deck did not comply with the specification and Carothers would have to submit its request as a variation with a credit modification (findings 15-16).

Apparently the AF gave no thought to FAR 52.236-5, Material and Workmanship. We hold that Carothers made a prima facie case that the 2″ deck was equivalent to the 2 1/2″ deck.

*The AF Failed to Rebut Carothers' Proof*

Applying a similar regulation to the present Material and Workmanship Clause, the Court of Claims held that contracting officers lack authority to deny substitute products shown to be equivalent to a specified proprietary product:

> The contracting officer does have to exercise judgment to determine whether the item proposed to be substituted is equal in quality and performance to the designated proprietary product, but his power does not extend to a

15

> refusal to allow a replacement which is equal in these
> respects.

*Jack Stone Co. v. United States*, 344 F.2d 370, 374 (1965).

Other than Mr. Arlyn Marheine's cryptic comment (finding 15) submitted before Mr. Harrison's report (finding 18), there is nothing from the AF indicating a serious consideration of Carothers' evidence that the 2″ deck was equivalent to the 2 1/2″ deck specified in the solicitation. We see no evidence that an AF structural engineer ever evaluated the side-by-side presentation of product data submitted several times by Carothers or would even talk to Carothers about its evidence of equivalency (findings 4, 13, 15). The AF seems to ignore the third party structural engineer, Mr. Harrison, that Carothers hired with the AF's approval to evaluate equivalency of the 2″ deck. Mr. Harrison concluded that the 2″ deck was equivalent to the 2 1/2″ deck. (Findings 17-18) Mr. Harrison's report and testimony is overwhelmingly persuasive in the face of the AF's insistence on strict compliance with the specification (findings 15-16, 23). It may be that the AF could have proven either that there was another source for the 2 1/2″ deck or that the 2″ deck was not equivalent if it had conducted a structural engineering analysis of Carothers' evidence. Instead, the AF stuck with its position it would only consider the 2″ deck as a variation. (Findings 15-16) We interpret the AF's position to be one of strict compliance with the specifications. The AF seems to ignore the rights bestowed on contractors by FAR 52.236-5, Material and Workmanship. This attitude is clearly seen in the Contracting Officer's June 28, 2019, denial of Carothers' claim. (Finding 23) We hold that, in the absence of AF rebuttal based on engineering analysis of the data submitted to it, Carothers has met its burden of proof that the 2″ deck was equivalent to the 2 1/2″ deck. The burden then shifts to the AF. The AF has presented nothing. It failed to rebut Carothers' proof and its reliance on strict compliance with the 2 1/2″ thickness dimension is unpersuasive. Carothers has satisfied the three elements of proof quoted from *Classic Site Solutions* above. We hold that the AF's insistence on the 2 1/2″ deck without any serious effort to evaluate the data submitted by Carothers supporting the equality of the 2″ deck was an "unreasonable exercise of judgment." We hold that Carothers was entitled to substitute the 2″ deck pursuant to FAR 52.236- 5, Material and Workmanship. Carothers is entitled to compensation for the additional costs associated with its installing the proprietary 2 1/2″ deck.

## CONCLUSION

Based on the above we sustain the appeal.

Dated:  February 11, 2021

CRAIG S. CLARKE
Administrative Judge
Armed Services Board
of Contract Appeals

I concur

I concur

RICHARD SHACKLEFORD
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

J. REID PROUTY
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

17

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA No. 62204, Appeal of Carothers Construction, Inc., rendered in conformance with the Board's Charter.

Dated:  February 11, 2021

PAULLA K. GATES-LEWIS
Recorder, Armed Services
Board of Contract Appeals